NO. 14-5057

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ROBERT A. GREEN,
PLAINTIFF-APPELLANT,

v.

UNITED STATES OF AMERICA,
DEFENDANT-APPELLEE.

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
IN 13-762C, JUDGE NANCY B. FIRESTONE

BRIEF AND JOINT APPENDIX OF APPELLANT ROBERT A. GREEN

STEVEN H. JESSER
STEVEN H. JESSER, ATTORNEY AT LAW, P.C.
2700 PATRIOT BOULEVARD, SUITE 250
GLENVIEW, IL 60026-8021
(847) 424-0200
shj@sjesser.com

ATTORNEY FOR APPELLANT-PLAINTIFF

July 8, 2014

ORAL ARGUMENT NOT REQUESTED

## Corporate Disclosure Statement

Pursuant to FRAP 26.1, appellant-plaintiff Robert A. Green (hereinafter "Green") makes the following disclosure, which was included in the Certificate of Interest, previously filed (Joint Appendix (hereafter (JA) 73-74). Undersigned appellant counsel for Green and counsel for appellee- defendant United States of America (hereinafter "US") duly conferred, and concurred that Green's intended appendix, and its 75-page contents, be entitled a JA.

1. Is said party a subsidiary or affiliate or otherwise a part of a publicly owned corporation?  Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? Answer: No.

3. The full name of every party that the attorney represents in the case? Answer: Robert A. Green.

4. The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the trial court or before an administrative agency) or are expected to appear for the party in this court? Answer: Steven H. Jesser, of Steven H. Jesser, Attorney at Law, P.C.

5. If the party is a corporation, what publicly held company owns 10% or more of the party's or stock? Answer: Green is not a corporation.

/s/ Steven H. Jesser

Steven H. Jesser, Attorney at Law, P.C.
2700 Patriot Boulevard, Suite 250
Glenview, IL 60026-8021
847-424-0200
800-330-9710 fax
shj@sjesser.com

July 8, 2014

# Table of Contents

Corporate Disclosure Statement…………………………………………...……2

Table of Contents……………………………………………………………….4

Table of Authorities……………………………………………………………5

Statement of Related Cases……………………………………………………6

Jurisdictional Statement………………………………………………………...6

Statement of the Issue Presented for Review …………………………………7

Statement of the Case…………………………………………………………...7

Statement of the Facts…………………………………………………………...8

Summary of Argument…………………………………………………....……16

Standard of Review…………………………………………....………………..17

Argument

**THE TRIAL COURT ERRED IN DISMISSING THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CAUSE OF ACTION BY NOT EXERCISING ITS ALLOWABLE EQUITABLE DISCRETION**…………………………………..………..…18

Conclusion……………………………………………………………….....21

Certificate of Compliance…………………………………………………...22

Certificate of Filing and Service……………………………………………...23

Addendum………………………………………………………………...23

Judgment, dated 2/20/2014: "1"

Order granting defendant's motion to dismiss, dated 2/20/2014: "2-9"

# Table of Authorities

Cases:

*Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009)................12

*Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998).............................13

*John Doe v. Metropolitan Police Dept. of Dist. of Columbia*, C.A.D.C.2006, 445

F.3d 460, 370 U.S.App. D.C. 381.......................................................17

*Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005)...................15

*Fothergill v. U.S.*, C.A.1 (Puerto Rico) 2009, 566 F.3d 248, cert. den. 130 S.Ct.

1892, 559 U.S. 1006, 176 L.Ed.2d 365................................................17

*Green v. United States*, 114 Fed. Cl. 791 (2014.)...................................7,18

*Pauley Petroleum, Inc. v. U.S.*, 591 F.2d 1308 (1979), 219 Ct.Cl. 24, cert den. 100

S.Ct. 206, 444 U.S. 898, 62 L.Ed. 2d 13..............................................20

*Portsmouth Redevelopment and Housing Authority v. Pierce*, 706 F.2d 471 (C.A.

4, 1983), cert den. 104 S.Ct. 392, 464 U.S. 960, 78 L.Ed.2d 336.................19

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir.
1988)...................................................................................14

*United States v. Testan*, 424 U.S. 392, 400 (1976)..................................12

Statutes:

28 U.S.C. § 1491.......................................................................6,14

Regulations:

31 C.F.R. § 357.0(a)(2)………………………………………………12

31 C.F.R. § 357.13(a), (b)………………………………………………12

31 C.F.R. § 357.21(a)(1)………………………………………………..13

31 C.F.R. § 357.21(b)(2)(iii)………………………………………....12,14

31 C.F.R. § 357.42………………………………………………………13

Cal. Prob. Code §4231 (a) (2012)…………………………………………10

Cal. Prob. Code §4232(a) (2012)…………………………………………11

Cal. Prob. Code §4232(b) (2012)…………………………………………10

Cal. Prob. Code §4234(a) (2012)…………………………………………11

Cal. Prob. Code §4264 (2012)……………………………………………11

## Statement of Related Cases

There exists no other appeal in or from the same civil action or proceeding in the trial court before this or any other appellate court.

## Jurisdictional Statement

**Basis for District Court subject-matter jurisdiction:** The basis of the trial court's subject-matter jurisdiction is 28 USC § 1491. The trial court had jurisdiction to render judgment upon any claim against the US founded either upon the Constitution, any Act of Congress, or any regulation of an executive department, or upon any express of implied contract with the US. The trial court

issued a final order on February 20, 2014 (JA 2-9) and issued a final judgment on February 20, 2014 (JA 1).

Green was a citizen of the State of Illinois and of the Northern District of Illinois, when the acts of which he complained were committed by US.

**Basis for Court of Appeals' jurisdiction:** This is an appeal from a final judgment, under 28 U.S.C. § 1291, in that dismissal on all claims was entered by the trial court on February 20, 2014 in favor of US and against Green.

**Dates of judgment and timeliness of appeal:** The district court's final dismissal order and judgment thereupon were entered on February 20, 2014 (JA 1-9) and a notice of appeal therefrom was filed by plaintiff on February 28, 2014 (JA 75). No post-trial motions were filed.

## Statement of the Issue Presented for Review

WHETHER THE TRIAL COURT ERRED IN DISMISSING THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CAUSE OF ACTION BY NOT EXERCISING ITS ALLOWABLE EQUITABLE DISCRETION

## Statement of the Case

The trial court's published order and opinion in this appeal is found at *Green v. United States,* 114 Fed. Cl. 791 (2014.) Green claims entitlement to damages from the US for funds erroneously, mistakenly, and negligently paid to another, and not to Green, by US's Treasury Retail Securities, an agency of the Bureau of the Public Debt of the Office of Retail Securities of the Department of Treasury.

Green avers that defendant mis-directed such monies to another in derogation of state statute and federal executive regulation, thereby depriving him of such funds. Upon motion of the US for lack of subject matt jurisdiction, the trial Court dismissed the complaint, from which dismissal Green herein appeals.

### Statement of the Facts

Complaint:

The following are the most pertinent <u>allegations</u> from Green's complaint, JA 56-65. Green claimed entitlement to damages from US for funds erroneously, mistakenly, and negligently paid to another, and not to Green, by defendant's Treasury Retail Securities, an agency of the Bureau of the Public Debt of the Office of Retail Securities of the Department of Treasury. Green averred that defendant mis-directed such monies to another in derogation of state statute and federal executive regulation, thereby depriving him of such funds. Green was the beneficiary of the Ann C. Spiegel Revocable Trust, dated August 13, 2008. (hereinafter Spiegel). Spiegel had told plaintiff on several occasions that she had Treasury Certificates that embodied much of her wealth which were made to pay on her death (POD) to Robert Green and that when she died, plaintiff would become the sole owner of these Treasury Certificates. Spiegel established a Legacy Direct Account and registered it as "Ann C. Spiegel POD Robert A. Green" (hereinafter "Account").

8

Mark Samuels (hereinafter "Samuels") from his home in Florida wrongfully initiated a plan to interfere with Spiegel's fixed intention to leave the account to Green upon her death. Spiegel arranged for an estate planning attorney Howard Borenstein (hereinafter "Borenstein") in California to draft estate planning documents for Spiegel that were consistent with Samuel's wrongful plan to interfere with plaintiff's rights of inheritance under the Account. Six weeks prior to Spiegel's death, on or about August 13, 2008, Samuels arranged for and accompanied attorney Borenstein to visit Spiegel in an assisted living facility in California, in order to execute new estate planning documents, which documents were a drastic departure from and inconsistent with Spiegel's testamentary intention. Spiegel was then ninety-one (91) years of age at the time, heavily medicated and in an overall diminished mental state.

Green was to receive 100.00% of the government bonds in Spiegel's Legacy Direct Account, pursuant to the power of direction provisions thereof, but Spiegels's new purported revocable trust left her entire estate equally to Plaintiff, Samuels, and Samuels's sister, Barbara Bautista [ hereinafter "Bautista"], depriving plaintiff of more than $ 375,000.00. Despite an invalid power of attorney, on or about September 25, 2008, Samuels used Spiegel's purported durable power of attorney and wrongfully changed the registration on the account to Spiegel's trust of which Samuels and Bautista are substantial purported beneficiaries, thereby

9

revoking the pay on death clause to Green, and reducing plaintiff's inheritance by two-thirds.

The US had a duty of due care to plaintiff relating to the treasury certificate of Ms. Spiegel. However, the US Treasury Department approved the requested change on or about October 14, 2008 when the value of the account was $945,000.00.This was the same day that Spiegel died. US disregarded state law in allowing the change of beneficiary, a proximate result of its mistake, error, and financial negligence, whereunder it owed Green a duty of due care, and breached such duty, proximately resulting in plaintiff's damages at law.

The purported durable power of attorney in question did not expressly grant Samuels any of the powers to create, modify, revoke, or terminate a trust, so he was therefore prohibited from transferring and retitling the Decedent's Legacy Direct POD Account to the Decedent' s Trust. Green sued Samuels for tortious interference with an expected and obtained through settlement, Green recovered certain, but not all of his damages, under which settlement plaintiff was not barred from recovering the remainder of his damages from other non-parties.

Cal. Prob. Code §4232(b) (2012) requires that an attorney-in-fact is not in violation of any duty solely because he also benefits from his action. The US failed to ensure that this occurred. Cal. Prob. Code §4231 (a) (2012) requires a duty to observe the same standard of care as a trustee of an express trust. The US failed

to ensure that this occurred. Under Cal. Prob. Code, a duty of loyalty exists to act solely in the interest of the principal and to avoid conflicts of interest.  The US failed to ensure that this occurred. Cal. Prob. Code §4232(a) (2012). Under Cal. Prob. Code §4234(a) (2012), a duty exists to keep in regular contact with the principal, to communicate with the principal, and to follow the instructions of the principal. Samuels performed none of these duties, and the US failed to investigate whether any such statutorily required actions occurred. Under Cal. Prob. Code §4264 (2012), an attorney in fact may not perform any of  acts on behalf of the principal or with the property of the principal unless the power of attorney expressly grants that authority to the attorney-in-fact. The US failed to ensure that this occurred. The US investigated or enforced none of the foregoing before United States Treasury Department approved the requested change on or about October 14, 2008.

## Motion to Dismiss:

The following are the most pertinent <u>assertions</u> from the US's motion to dismiss Green's complaint, JA 10-48. The complaint does not state a plausible claim against the US within the trial court's jurisdiction and should be dismissed. The complaint does not state a plausible claim against the US. The Bureau of the Fiscal Service in Parkersburg, West Virginia, processed the request for Spiegel's account to be renamed to remove Green's name as a POD

beneficiary, and the name of the account was updated by October 14, 2008, according to a 2:14 p.m. Eastern Time computer print-out from that office. Ms. Spiegel died in Los Angeles County, California on October 14, 2008 at 12:30 p.m. Pacific Time, or 3:30 p.m. Eastern Time.

The US cited *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) that "In ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff. Green does not allege that he had a contract with the US, and Green does not identify any money-mandating statute, regulation, or constitutional provision requiring the payment he seeks. *United States v. Testan*, 424 U.S. 392, 400 (1976). Green alleges that the US's approval of the change in "registration was in violation of 31 C.F.R. § 357.13(a)" and cites 31 C.F.R. § 13(b), which US understands as a reference to 31 C.F.R. § 357.13(b). The provisions of 31 C.F.R. § 357.13(a)-(b), address Government obligations with respect to book-entry securities held in the commercial book-entry system and are inapplicable to the Legacy Treasury Direct Account described in the complaint. 31 C.F.R. § 357.0(a)(2). Legacy Treasury Direct accounts are governed by 31 C.F.R. §§ 357.20 to 357.32. Under 31 C.F.R. § 357.21(b)(2)(iii), POD registration creates "ownership rights in the beneficiary only if the beneficiary survives the owner. During an owner's

12

lifetime, a transaction request may be executed by the owner without the consent of the beneficiary." 31 C.F.R. § 357.21(b)(2)(iii). Accordingly, Green had no ownership rights regarding Ms. Spiegel's account before the time Speigel died on October 14, 2008 at 12:30 p.m. Pacific Time, so Green cannot have acquired any ownership rights because he was not listed as a POD beneficiary for Spiegel's account. Thus, at no time did Green possess any ownership rights with respect to the account at issue under C.F.R. § 357.21(a)(1) ("Registration of a security conclusively establishes ownership").

The trial court does not possess jurisdiction to entertain negligence claims, under Cottrell v. *United States*, 42 Fed. Cl. 144, 149 (1998), and does not possess authority to entertain claims based upon state law, under 28 U.S.C. § 1491. Federal regulation provides that the Treasury may rely on the information provided in a tender, transaction request form, or Transfer Message, and [is] not required to verify the information. The Department shall not be liable for any action taken in accordance with the information set out in a tender, transaction request form, or Transfer Message, or evidence submitted in support thereof under 31 C.F.R. § 357.42.

Even if Mr. Green's complaint were deemed to sufficiently allege a Fifth Amendment takings claim within the trial Court's jurisdiction, the complaint

13

should nonetheless be dismissed under RCFC 12(b)(6) for failure to state a claim. Regulation establishes that POD registration does not create ownership rights before the account holder's death. 31 C.F.R. § 357.21(b)(2)(iii). Green cannot, as a POD beneficiary, have possessed a cognizable property interest regarding Spiegel's account before her death. At the time of Spiegel's death, Green was not listed as a POD beneficiary. Thus, Mr. Green cannot have possessed any cognizable property interest in the proceeds from Spiegel's account at or after her death.

Final order and judgment:

The following are the most pertinent <u>findings and holdings</u> of the trial court's judgment and final order, JA 1-9, wherein the trial court found that it does not have jurisdiction over plaintiff's claims; thus, the case is dismissed under RCFC 12(b)(1) because the subject regulations do not provide a right to damages. It is well-settled that the burden is on the plaintiff to prove jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Under the Tucker Act, this court has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a) (2012). Green does not allege that he had a

contract with the United States.

Rather, he bases his claim on Treasury regulations set forth at 31 C.F.R. §§ 357.20 to 357.32,4 which he alleges were violated in contravention of California state law when he was removed as the POD beneficiary on Spiegel's Legacy Account. The government argues that this court does not have jurisdiction over this claim because Mr. Green does not have any right to direct payment as the sole beneficiary under the above-cited regulations after the transfer of registration to the Spiegel Trust. Further, the government argues that the United States is immune from liability, and thus damages, for actions that it takes in making changes to Legacy Accounts in accordance with transfer requests.

When a complaint is filed, the court must determine if the regulations which serve as the basis for the claim are money-mandating. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005). The trial court agreed with the US that after the registration for Spiegel's Legacy Account was changed, he no longer had a right to direct payment as the POD beneficiary and was only entitled to monies through the Spiegel Trust. The death certificate submitted by the government establishes that Spiegel died on October 14, 2008 at 12:30 p.m. Pacific Time, after the Legacy Account change was made and Green was removed as the POD beneficiary, so Green therefore had no right to direct

payment by the government as the POD beneficiary upon Spiegel's death. Treasury regulations expressly provide that the US may rely on information provided in a tender, transaction request form, or Transfer Message, and [is] not required to verify the information. Because the regulations clearly state that the government cannot be liable for "any action" taken in accordance with the information it receives in the transaction request form, the government correctly argues that Green has not identified a money mandating source for his claim.

There is no exception to the US's immunity from liability under the regulation where violations of state law or negligence by Treasury are alleged. The US cannot be liable for "any action" it took in accordance with the information it received on the change form submitted and signed by Samuels on Spiegel's behalf. Because the US has immunity from liability for actions taken by the Treasury under the regulations at issue here, Mr. Green has failed to identify a money-mandating source for his claims.

The trial court does not have jurisdiction over Mr. Green's claims sounding in tort, including his claims for "financial negligence." The Tucker Act excludes from the court's jurisdiction claims sounding in tort.

### Summary of Argument

The trial court's dismissal based on lack of jurisdiction and failure to state a plausible cause of cause was error, in that it failed to exercise allowable and

appropriate equitable considerations, under the circumstances alleged in the complaint.

## Standard of Review

In carrying out a *de novo* review of a grant of motion to dismiss for want of subject matter jurisdiction that is adjudicated on the pleadings, in advance of jurisdictional discovery and without the taking of any evidence, a Court of Appeals takes as true all well-pleaded facts in the complaints, scrutinizes them in the light most hospitable to plaintiffs' theory of liability, and draws all reasonable inferences in plaintiffs' favor. If the well-plead facts, evaluated in that manner, do not support a finding of subject-matter jurisdiction, dismissal must stand. *Fothergill v. U.S.*, C.A.1 (P.R.) 2009, 566 F.3d 248, certiorari denied 130 S.Ct. 1892, 559 U.S. 1006, 176 L.Ed.2d 365. A Court of Appeals reviews *de novo* dismissal of a complaint for lack of subject matter jurisdiction. *John Doe v. Metropolitan Police Dept. of Dist. of Columbia*, C.A.D.C.2006, 445 F.3d 460, 370 U.S.App.D.C. 381.

**Argument**

**THE TRIAL COURT ERRED IN DISMISSING THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CAUSE OF ACTION BY NOT EXERCISING ITS ALLOWABLE EQUITABLE DISCRETION**

Stepping back for a moment to assess the massive fraudulent scheme to which Green was subjected by Samuel's purported and invalid durable power of attorney, submitted to a 91-year old person with obvious mental incapacity, two months before her death, one is struck by the audacious conspiracy and inequity which Green suffered by certain members of his family. One is struck by the unfairness and inequity of the timing of the Legacy Account change occurring approximately only two hours before Spiegel's death, all to the financial detriment of Green. There exists authority cited below for the trial judge to have recognized the complete inequity of Green's financial loss, and to have found subject matter jurisdiction, notwithstanding intricate federal regulations for which the case *sub judice*, as reported at 114 Fed. Cl. 791 (2014) is the only reported legal authority regarding these subject regulations.

Samuels had a duty of loyalty to Spiegel, and to act solely in her best interest, and to avoid any conflicts of interest. Because Samuels was a specifically-named beneficiary of Spiegel's purported Trust instrument dated August 13, 2008, any funding of that Trust with Spiegel's property necessarily presented Samuels with an inherent conflict of interest which he had an affirmative

duty to avoid. Samuels breached these duties by effectuating the transfer and retitling Spiegel's Legacy Direct Account to Spiegel's Trust, thereby making himself and his sister two- thirds beneficiaries of those assets, to plaintiff's financial detriment. Samuels utterly failed to keep any regular contact with, or communicate with the Spiegel regarding his actions as her attorney-in-fact, and did not provide any evidence that he received instructions from Spiegel to make the transfer of her Legacy Direct Account to the Trust, none of which the US investigated or enforced before the United States Treasury Department approved the requested change on or about October 14, 2008; the same day Spiegel died.

Where a claim primarily seeks monetary relief, as here, it is improper to deny the Court of Federal Claims jurisdiction simply because it cannot grant the precise equitable relief sought. *Portsmouth Redevelopment and Housing Authority v. Pierce,* 706 F.2d 471 (C.A. 4, 1983), cert den. 104 S.Ct. 392, 464 U.S. 960, 78 L.Ed.2d 336. Equitable doctrines can be employed incidentally to the general monetary jurisdiction of the Court of Federal Claims, either as equitable procedures to arrive at a money judgment, or as substantive principles on which to base the award of a money judgment. The Court has no jurisdiction to grant specific equitable relief, but such principle does not preclude it from exercising equitable powers as an incident of its general jurisdiction. *Pauley Petroleum, Inc.*

*v. U.S.*, 591 F.2d 1308 (1979), 219 Ct.Cl. 24, cert den. 100 S.Ct. 206, 444 U.S. 898, 62 L.Ed. 2d 13.

Green urges herein that both *Portsmouth* and *Pauley*, never reversed, allowed the trial court to grant subject matter jurisdiction based on its exercise of the equitable powers which it possesses. The trial Court's equitable powers are to be used selectively, but the facts set forth in the complaint would have completely justified them to have been implemented, in finding subject matter jurisdiction of the Court to exist in this action.

Under 31 C.F.R. § 357.21(a)(1), "Registration of a security conclusively establishes ownership...." The trial Court misapprehended and overlooked that Green asserts that Spiegel's "registration" was a sham, induced by fraud and deceit and undue influence upon an elderly person who lacked mental capacity, which unethical conduct the State of California attempts to prevent. No effort was made by the US to determine if the "registration" was valid, or void. Samuel's scheme was conducted with no disclosure to, or knowledge by, Green. The US's executive department, the Department of Treasury could not have intended such an inequitable result, when it promulgated 31 C.F.R. § 357.21(a)(1).

The complaint does not fail because plaintiff does not allege a formal contract with defendant. Jurisdiction obtains here because plaintiff's claim is founded upon regulation of an executive department. 28 U.S.C. § 1491(a).

Plaintiff alleged failure by defendant to observe specifically-described state regulations.

## Conclusion

For the reasons stated above, Green  urges that the dismissal be reversed and that subject matter jurisdiction be specifically found, so that the action can proceed in the trial court.

/s/ Steven H. Jesser

Robert A. Green, Plaintiff-Appellant,
By: Steven H. Jesser, Attorney at Law, P.C.,
    his attorney

Steven H. Jesser, Attorney at Law, P.C.
Admitted to United States Court of Appeals for the Federal Circuit
2700 Patriot Boulevard, Suite 250
Glenview, IL 60026-8021
847-424-0200
shj@sjesser.com

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

The brief contains 4,394 words, excluding the parts of the brief exempted by

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). The brief uses a monospaced

typeface and contains 629 lines of text excluding the parts of the brief exempted by

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and

the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).The

brief has been prepared in a proportionally spaced typeface using Mircosoft Word

2010. The brief has been prepared in a monospaced typeface using Microsoft Word

2010 in Times New Roman font, size 14.

/s/Steven H. Jesser
Steven H. Jesser, Attorney for Appellant
Steven H. Jesser, Attorney at Law, P.C.
2700 Patriot Boulevard, Suite 250
Glenview, IL 60026-8021
847-424-0200
800-330-9710 fax
shj@sjesser.com

July 8, 2014

## Certificate of Filing and Service

I, Steven H. Jesser, the attorney, state that on July 8, 2014, I electronically filed----and prepared for mailing, when approved for mailing by the Clerk of Court, the original and 11 copies of----this brief and joint appendix of plaintiff-appellant Robert A. Green, with the Clerk of the U.S. Court of Appeals for the Federal Circuit, 717 Madison Place, NW, Washington, DC 20439. I shall mail same to the Clerk of Court from the Glenview, IL Post Office, with 2 copies thereof priority mailed therefrom to:

Daniel B. Volk
US DOJ
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

/s/ Steven H. Jesser

## Addendum

Judgment dated 2/20/2014: "1"

Order granting defendant's motion to dismiss, dated 2/20/2014: "2-9"

# In the United States Court of Federal Claims

### No. 13-762 C

**ROBERT A. GREEN**

**JUDGMENT**

v.

**THE UNITED STATES**

Pursuant to the court's Order, filed February 20, 2014, granting defendant's motion to dismiss pursuant to RCFC 12(b)(1),

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed, for lack of subject matter jurisdiction. Each party is to bear its own costs.

Hazel C. Keahey
Clerk of Court

February 25, 2014                    By:    s/ Debra L. Samler

Deposit Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 13-762C
(Filed: February 20, 2014)

| | |
|---|---|
| ROBERT A. GREEN, ) | |
| ) | |
| Plaintiff, ) | Motion to Dismiss; Change of Legacy |
| ) | Treasury Direct Account Registration; |
| v. ) | 31 C.F.R. § 357.21; 31 C.F.R. § |
| ) | 357.42 |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

*Steven H. Jesser*, Skokie, IL, for plaintiff.

*Daniel B. Volk*, Commercial Litigation Branch, United States Department of Justice, Washington, DC, with whom were *Lisa Martin*, Bureau of the Fiscal Service, Office of the Chief Counsel, United States Department of the Treasury, Parkersburg, WV, and *Stuart F. Delery*, Assistant Attorney General, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Pending before the court is the motion of defendant, the United States ("the government"), to dismiss, pursuant to Rule 12(b)(1) or, in the alternative, 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), the complaint filed by plaintiff, Robert A. Green ("Mr. Green"). In his complaint, Mr. Green "claims entitlement to damages from defendant United States of [America] for funds erroneously, mistakenly, and negligently paid to another," by the government from a Legacy Treasury

Direct[1] account ("Legacy Account") in the United States Treasury ("Treasury"). Comp.
at 1, ECF No. 1. The United States argues that the complaint does not state a plausible
claim against the United States within the Court's jurisdiction and thus the complaint
should be dismissed. In the alternative, the government argues that, even if this court has
jurisdiction over the claim, the plaintiff cannot state a claim for which relief can be
granted. For the reasons that follow, the court finds that this court does not have
jurisdiction over plaintiff's claims; thus, the case must be dismissed under RCFC
12(b)(1) because the subject regulations do not provide a right to damages.

## I.    BACKGROUND

According to the complaint, Mr. Green was once named as the sole beneficiary of
the Legacy Account[2] established by his aunt, Ann C. Spiegel. Compl. at ¶ 4.
Apparently, when she first established the account, it was payable on death ("POD") to
Mr. Green. Id. On August 13, 2008, Ms. Spiegel executed a durable power of attorney
appointing Mark Samuels, who was also her nephew, as her attorney-in-fact.[3] App. to

---

[1] "The Legacy Treasury Direct system is a non-Internet-based book-entry system maintained by
Treasury for purchasing and holding marketable Treasury securities as book-entry products." 31
C.F.R. § 357.0(a)(2); see generally TreasuryDirect.gov, Legacy Treasury Direct,
http://www.treasurydirect.gov/indiv/myaccount/myaccount_legacytd.htm (last visited Feb. 20,
2014)

[2] As noted above, Legacy Accounts are maintained by the United States Treasury for purchasing
and holding marketable Treasury securities as book-entry products. 31 C.F.R. § 357.0(a)(2).

[3] The government has provided the court with an appendix containing four documents: (1) Ms.
Spiegel's power of attorney; (2) the transaction request to change the registration of Ms.
Spiegel's account; (3) a computer print-out from the Bureau of the Fiscal Service in Parkersburg,
West Virginia at 2:17 p.m. Eastern Time on October 14, 2008; and (4) Ms. Spiegel's death
certificate.

Mot. to Dismiss at 22, ECF No. 5; see Compl. at ¶ 7, 9. Thereafter, on September 25, 2008, an attorney, Howard S. Bornstein, electronically submitted a "Legacy Treasury Direct Transaction Request" to the Treasury Retail Securities Site on behalf of Ms. Spiegel requesting a registration change from "Ann C. Spiegel POD Robert Green to Ann C. Spiegel, Trustee for the Ann C. Spiegel Revocable Trust ["Spiegel Trust"] dated August 13, 2008." App. to Mot. to Dismiss at 25-27; see Compl. at ¶ 9. The request was signed for Ms. Spiegel by Mr. Samuels, her attorney-in-fact. Id. According to the records from the Bureau of the Fiscal Service in Parkersburg, West Virginia, the Treasury processed the request and changed the registration on October 14, 2008 at 2:14 p.m. Eastern Time. App. to Mot. to Dismiss at 28; see Compl. at ¶ 10. Ms. Spiegel died in Los Angeles County, California on that same date, October 14, 2008, at 3:30 p.m. Eastern Time. App. to Mot. to Dismiss at 29; see Compl. at ¶ 2.

According to Mr. Green, Mr. Samuels violated California state law when he signed and had submitted the forms used to change the registration on Ms. Spiegel's Legacy Account. Mr. Green claims that by virtue of the government making the registration change he was forced to share his inheritance with Mr. Samuels and Barbara Bautista, who was Ms. Spiegel's niece and Mr. Samuel's sister. These two individuals, along with Mr. Green, were the three beneficiaries of the Spiegel Trust.

Mr. Green sued Mr. Samuels for tortious inference with an expected inheritance when he learned in 2010 that the Legacy Account had been originally established on March 3, 2008 and registered "Ann C. Spiegel POD Robert A. Green." That lawsuit was

settled before this case was filed. The plaintiff claims, however, that he remains "damaged by more than $375,000.00."

In this suit against the United States, Mr. Green alleges that the government violated his rights to Ms. Spiegel's Legacy Account by processing the registration change without confirming that the request complied with California state law and seeks monetary damages on this basis. The plaintiff also contends that the government's actions were negligent because the government failed to investigate Mr. Samuel's authority before changing Ms. Spiegel's account. He further contends that Treasury's actions in changing the account upon receiving September 25, 2008 request and without notice to plaintiff amounted to a violation of his due process rights under the Fifth Amendment.

## II.    DISCUSSION

It is well-settled that the burden is on the plaintiff to prove jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Ordinarily, undisputed factual allegations contained in the complaint must be treated as true. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). However, in resolving disputes regarding jurisdictional facts, the court may look beyond the pleadings. See Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). If the Court finds that it lacks subject-matter jurisdiction, it must dismiss the complaint. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

Under the Tucker Act, this court has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of

Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a) (2012). Mr. Green does not allege that he had a contract with the United States. Rather, he bases his claim on Treasury regulations set forth at 31 C.F.R. §§ 357.20 to 357.32,[4] which he alleges were violated in contravention of California state law when he was removed as the POD beneficiary on Ms. Spiegel's Legacy Account. The government argues that this court does not have jurisdiction over this claim because Mr. Green does not have any right to direct payment as the sole beneficiary under the above-cited regulations after the transfer of registration to the Spiegel Trust. Further, the government argues that the United States is immune from liability, and thus damages, for actions that it takes in making changes to Legacy Accounts in accordance with transfer requests.

When a complaint is filed, the court must determine if the regulations which serve as the basis for the claim are money-mandating. Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005). If the court determines that the source identified is not money-mandating, the court must dismiss the case. Id. Here, the government argues that Mr. Green's complaint must be dismissed because, under the applicable regulations, POD beneficiaries like Mr. Green do not have any rights "[d]uring an owner's lifetime [and that] a transaction request may be executed by the owner without the consent of the beneficiary." 31 C.F.R. § 357.21(b)(2)(iii). As such, the government continues, Mr. Green had no ownership rights as the designated sole beneficiary to Ms. Spiegel's Legacy

---

[4] The plaintiff mistakenly identified a different set of regulations in his complaint. He now agrees that the above-cited regulations are the correct regulations to be applied. See Resp. to Mot. to Dismiss at ¶ 19.

Account before Ms. Spiegel's death. Further, the government argues, after the registration for Ms. Spiegel's Legacy Account was changed, he no longer had a right to direct payment as the POD beneficiary. Rather, Mr. Green was only entitled to monies through the Spiegel Trust.

The court agrees with the government. The death certificate submitted by the government establishes that Ms. Spiegel died on October 14, 2008 at 12:30 p.m. Pacific Time, after the Legacy Account change was made and Mr. Green was removed as the POD beneficiary. Mr. Green therefore had no right to direct payment by the government as the POD beneficiary upon Ms. Spiegel's death. After the registration was changed, Mr. Green's right to payment was only from the Spiegel Trust. Indeed, Mr. Green is not seeking to compel a payment as the POD beneficiary of Ms. Spiegel's Legacy Account. Rather, as discussed below, he is challenging the government's actions in changing Ms. Spiegel's Legacy Account registration to the Spiegel Trust.

With regard to the registration change, the government argues that the case must be dismissed because there is no right to damages under Treasury regulations for actions taken by the United States in making changes pursuant to transfer requests. Thus, the government argues, the United States cannot be sued for allegedly "disregarding [California] state law in allowing the change of beneficiary," as Mr. Green contends in his complaint. Treasury regulations expressly provide that the United States

> may rely on the information provided in a tender, transaction request form, or Transfer Message, and [is] not required to verify the information. The Department . . . shall not be liable for any action taken in accordance with the information set out in a tender, transaction request form, or Transfer Message, or evidence submitted in support thereof.

31 C.F.R. § 357.42. Because the regulations clearly state that the government cannot be liable for "any action" taken in accordance with the information it receives in the transaction request form, the government correctly argues that Mr. Green has not identified a money mandating source for his claim. Contrary to Mr. Green's contentions, there is no exception to the government's immunity from liability under the regulation where violations of state law or negligence by Treasury are alleged. The United States cannot be liable for "any action" it took in accordance with the information it received on the change form submitted and signed by Mr. Samuels on Ms. Spiegel's behalf. Because the government has immunity from liability for actions taken by the Treasury under the regulations at issue here, Mr. Green has failed to identify a money-mandating source for his claims.[5]

## III. CONCLUSION

For the foregoing reasons, the Court must dismiss the complaint under RCFC 12(b)(1). The government's motion to dismiss is therefore **GRANTED**. The clerk is directed to enter judgment accordingly. Each party to bear its own costs.

---

[5] The court notes that Mr. Green also alleges that his "claim is also governed by the Fifth Amendment to the United States Constitution, which provides in pertinent part that "no person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The portion of the Fifth Amendment that Mr. Green relies upon—the Due Process Clause—does not give rise to a money-mandating claim. Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006) ("A violation of due process rights, however, does not give rise to a claim for money damages against the United States in the Court of Federal Claims."). Similarly, this court does not have jurisdiction over Mr. Green's claims sounding in tort, including his claims for "financial negligence." The Tucker Act excludes from this court's jurisdiction claims sounding in tort. 28 U.S.C. § 1491(a); e.g. Sounders v. South Carolina Pub. Serv. Auth., 497 F.3d 1303, 1307 (Fed. Cir. 2007).

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

NO. 14-5057

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

ROBERT A. GREEN,
PLAINTIFF-APPELLANT,

v.

UNITED STATES OF AMERICA,
DEFENDANT-APPELLEE.

---

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
IN 13-762C, JUDGE NANCY B. FIRESTONE

---

### JOINT APPENDIX

---

STEVEN H. JESSER
STEVEN H. JESSER, ATTORNEY AT LAW, P.C.
2700 PATRIOT BOULEVARD, SUITE 250
GLENVIEW, IL 60026-8021
(847) 424-0200
shj@sjesser.com

ATTORNEY FOR APPELLANT-PLAINTIFF

July 8, 2014

# Table of Contents

Judgment………………………………………………………………………..1

Order granting defendant's motion to dismiss………………………………..2-9

Defendant's motion to dismiss and appendix………………………….…….10-48

Plaintiff's response to defendant's motion to dismiss………………..……...49-55

Defendant's reply in support of its motion to dismiss………………..……...67-70

Docket entries………………………………………………………….71-72

Certificate of interest…………………………………………………….73-74

Notice of appeal…………………………………………………………...75

----------

# In the United States Court of Federal Claims

### No. 13-762 C

**ROBERT A. GREEN**

**JUDGMENT**

     **v.**

**THE UNITED STATES**

Pursuant to the court's Order, filed February 20, 2014, granting defendant's motion to dismiss pursuant to RCFC 12(b)(1),

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed, for lack of subject matter jurisdiction. Each party is to bear its own costs.

                                 Hazel C. Keahey
                                 Clerk of Court

**February 25, 2014**          By:    s/ Debra L. Samler

                                 Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 13-762C
(Filed: February 20, 2014)

| | |
|---|---|
| ROBERT A. GREEN, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Motion to Dismiss; Change of Legacy |
| ) | Treasury Direct Account Registration; |
| v. ) | 31 C.F.R. § 357.21; 31 C.F.R. § |
| ) | 357.42 |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*Steven H. Jesser*, Skokie, IL, for plaintiff.

*Daniel B. Volk*, Commercial Litigation Branch, United States Department of Justice, Washington, DC, with whom were *Lisa Martin*, Bureau of the Fiscal Service, Office of the Chief Counsel, United States Department of the Treasury, Parkersburg, WV, and *Stuart F. Delery*, Assistant Attorney General, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Pending before the court is the motion of defendant, the United States ("the government"), to dismiss, pursuant to Rule 12(b)(1) or, in the alternative, 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), the complaint filed by plaintiff, Robert A. Green ("Mr. Green"). In his complaint, Mr. Green "claims entitlement to damages from defendant United States of [America] for funds erroneously, mistakenly, and negligently paid to another," by the government from a Legacy Treasury

Direct[1] account ("Legacy Account") in the United States Treasury ("Treasury").  Comp.

at 1, ECF No. 1.  The United States argues that the complaint does not state a plausible

claim against the United States within the Court's jurisdiction and thus the complaint

should be dismissed.  In the alternative, the government argues that, even if this court has

jurisdiction over the claim, the plaintiff cannot state a claim for which relief can be

granted.  For the reasons that follow, the court finds that this court does not have

jurisdiction over plaintiff's claims; thus, the case must be dismissed under RCFC

12(b)(1) because the subject regulations do not provide a right to damages.

## I.      BACKGROUND

According to the complaint, Mr. Green was once named as the sole beneficiary of

the Legacy Account[2] established by his aunt, Ann C. Spiegel.  Compl. at ¶ 4.

Apparently, when she first established the account, it was payable on death ("POD") to

Mr. Green.  Id.  On August 13, 2008, Ms. Spiegel executed a durable power of attorney

appointing Mark Samuels, who was also her nephew, as her attorney-in-fact.[3]  App. to

---

[1] "The Legacy Treasury Direct system is a non-Internet-based book-entry system maintained by Treasury for purchasing and holding marketable Treasury securities as book-entry products." 31 C.F.R. § 357.0(a)(2); see generally TreasuryDirect.gov, Legacy Treasury Direct, http://www.treasurydirect.gov/indiv/myaccount/myaccount_legacytd.htm (last visited Feb. 20, 2014)

[2] As noted above, Legacy Accounts are maintained by the United States Treasury for purchasing and holding marketable Treasury securities as book-entry products. 31 C.F.R. § 357.0(a)(2).

[3] The government has provided the court with an appendix containing four documents: (1) Ms. Spiegel's power of attorney; (2) the transaction request to change the registration of Ms. Spiegel's account; (3) a computer print-out from the Bureau of the Fiscal Service in Parkersburg, West Virginia at 2:17 p.m. Eastern Time on October 14, 2008; and (4) Ms. Spiegel's death certificate.

Mot. to Dismiss at 22, ECF No. 5; see Compl. at ¶ 7, 9. Thereafter, on September 25, 2008, an attorney, Howard S. Bornstein, electronically submitted a "Legacy Treasury Direct Transaction Request" to the Treasury Retail Securities Site on behalf of Ms. Spiegel requesting a registration change from "Ann C. Spiegel POD Robert Green to Ann C. Spiegel, Trustee for the Ann C. Spiegel Revocable Trust ["Spiegel Trust"] dated August 13, 2008." App. to Mot. to Dismiss at 25-27; see Compl. at ¶ 9. The request was signed for Ms. Spiegel by Mr. Samuels, her attorney-in-fact. Id. According to the records from the Bureau of the Fiscal Service in Parkersburg, West Virginia, the Treasury processed the request and changed the registration on October 14, 2008 at 2:14 p.m. Eastern Time. App. to Mot. to Dismiss at 28; see Compl. at ¶ 10. Ms. Spiegel died in Los Angeles County, California on that same date, October 14, 2008, at 3:30 p.m. Eastern Time. App. to Mot. to Dismiss at 29; see Compl. at ¶ 2.

According to Mr. Green, Mr. Samuels violated California state law when he signed and had submitted the forms used to change the registration on Ms. Spiegel's Legacy Account. Mr. Green claims that by virtue of the government making the registration change he was forced to share his inheritance with Mr. Samuels and Barbara Bautista, who was Ms. Spiegel's niece and Mr. Samuel's sister. These two individuals, along with Mr. Green, were the three beneficiaries of the Spiegel Trust.

Mr. Green sued Mr. Samuels for tortious inference with an expected inheritance when he learned in 2010 that the Legacy Account had been originally established on March 3, 2008 and registered "Ann C. Spiegel POD Robert A. Green." That lawsuit was

4

settled before this case was filed. The plaintiff claims, however, that he remains "damaged by more than $375,000.00."

In this suit against the United States, Mr. Green alleges that the government violated his rights to Ms. Spiegel's Legacy Account by processing the registration change without confirming that the request complied with California state law and seeks monetary damages on this basis. The plaintiff also contends that the government's actions were negligent because the government failed to investigate Mr. Samuel's authority before changing Ms. Spiegel's account. He further contends that Treasury's actions in changing the account upon receiving September 25, 2008 request and without notice to plaintiff amounted to a violation of his due process rights under the Fifth Amendment.

## II.    DISCUSSION

It is well-settled that the burden is on the plaintiff to prove jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Ordinarily, undisputed factual allegations contained in the complaint must be treated as true. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). However, in resolving disputes regarding jurisdictional facts, the court may look beyond the pleadings. See Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). If the Court finds that it lacks subject-matter jurisdiction, it must dismiss the complaint. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

Under the Tucker Act, this court has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of

Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a) (2012). Mr. Green does not allege that he had a contract with the United States. Rather, he bases his claim on Treasury regulations set forth at 31 C.F.R. §§ 357.20 to 357.32,[4] which he alleges were violated in contravention of California state law when he was removed as the POD beneficiary on Ms. Spiegel's Legacy Account. The government argues that this court does not have jurisdiction over this claim because Mr. Green does not have any right to direct payment as the sole beneficiary under the above-cited regulations after the transfer of registration to the Spiegel Trust. Further, the government argues that the United States is immune from liability, and thus damages, for actions that it takes in making changes to Legacy Accounts in accordance with transfer requests.

When a complaint is filed, the court must determine if the regulations which serve as the basis for the claim are money-mandating. Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005). If the court determines that the source identified is not money-mandating, the court must dismiss the case. Id. Here, the government argues that Mr. Green's complaint must be dismissed because, under the applicable regulations, POD beneficiaries like Mr. Green do not have any rights "[d]uring an owner's lifetime [and that] a transaction request may be executed by the owner without the consent of the beneficiary." 31 C.F.R. § 357.21(b)(2)(iii). As such, the government continues, Mr. Green had no ownership rights as the designated sole beneficiary to Ms. Spiegel's Legacy

---

[4] The plaintiff mistakenly identified a different set of regulations in his complaint. He now agrees that the above-cited regulations are the correct regulations to be applied. See Resp. to Mot. to Dismiss at ¶ 19.

Account before Ms. Spiegel's death. Further, the government argues, after the registration for Ms. Spiegel's Legacy Account was changed, he no longer had a right to direct payment as the POD beneficiary. Rather, Mr. Green was only entitled to monies through the Spiegel Trust.

The court agrees with the government. The death certificate submitted by the government establishes that Ms. Spiegel died on October 14, 2008 at 12:30 p.m. Pacific Time, after the Legacy Account change was made and Mr. Green was removed as the POD beneficiary. Mr. Green therefore had no right to direct payment by the government as the POD beneficiary upon Ms. Spiegel's death. After the registration was changed, Mr. Green's right to payment was only from the Spiegel Trust. Indeed, Mr. Green is not seeking to compel a payment as the POD beneficiary of Ms. Spiegel's Legacy Account. Rather, as discussed below, he is challenging the government's actions in changing Ms. Spiegel's Legacy Account registration to the Spiegel Trust.

With regard to the registration change, the government argues that the case must be dismissed because there is no right to damages under Treasury regulations for actions taken by the United States in making changes pursuant to transfer requests. Thus, the government argues, the United States cannot be sued for allegedly "disregarding [California] state law in allowing the change of beneficiary," as Mr. Green contends in his complaint. Treasury regulations expressly provide that the United States

> may rely on the information provided in a tender, transaction request form, or Transfer Message, and [is] not required to verify the information. The Department . . . shall not be liable for any action taken in accordance with the information set out in a tender, transaction request form, or Transfer Message, or evidence submitted in support thereof.

7

31 C.F.R. § 357.42. Because the regulations clearly state that the government cannot be liable for "any action" taken in accordance with the information it receives in the transaction request form, the government correctly argues that Mr. Green has not identified a money mandating source for his claim. Contrary to Mr. Green's contentions, there is no exception to the government's immunity from liability under the regulation where violations of state law or negligence by Treasury are alleged. The United States cannot be liable for "any action" it took in accordance with the information it received on the change form submitted and signed by Mr. Samuels on Ms. Spiegel's behalf. Because the government has immunity from liability for actions taken by the Treasury under the regulations at issue here, Mr. Green has failed to identify a money-mandating source for his claims.[5]

## III.  CONCLUSION

For the foregoing reasons, the Court must dismiss the complaint under RCFC 12(b)(1). The government's motion to dismiss is therefore **GRANTED**. The clerk is directed to enter judgment accordingly. Each party to bear its own costs.

---

[5] The court notes that Mr. Green also alleges that his "claim is also governed by the Fifth Amendment to the United States Constitution, which provides in pertinent part that "no person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The portion of the Fifth Amendment that Mr. Green relies upon—the Due Process Clause—does not give rise to a money-mandating claim. Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006) ("A violation of due process rights, however, does not give rise to a claim for money damages against the United States in the Court of Federal Claims."). Similarly, this court does not have jurisdiction over Mr. Green's claims sounding in tort, including his claims for "financial negligence." The Tucker Act excludes from this court's jurisdiction claims sounding in tort. 28 U.S.C. § 1491(a); e.g. Sounders v. South Carolina Pub. Serv. Auth., 497 F.3d 1303, 1307 (Fed. Cir. 2007).

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ROBERT A. GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 13-762C |
| | )   (Judge Firestone) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO DISMISS AND APPENDIX

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, Robert A. Green. In his complaint, Mr. Green "claims entitlement to damages from defendant United States of [America] for funds erroneously, mistakenly, and negligently paid to another." Compl. at 1. Because the complaint does not state a plausible claim against the United States within this Court's jurisdiction, it should be dismissed.

## STATEMENT OF THE ISSUES

1.      Whether the Court possesses jurisdiction to entertain the complaint.

2.      If the Court possesses jurisdiction, whether the complaint states a plausible claim against the United States.

## STATEMENT OF THE CASE

According to the complaint,[1] Mr. Green's aunt, Ann C. Spiegel, named him as a beneficiary of her Legacy Treasury Direct[2] account ("Ms. Spiegel's account"), by registering the

---

[1] Solely for purposes of this motion to dismiss, we treat Mr. Green's factual allegations as true.

[2] "The Legacy Treasury Direct system is a non-Internet-based book-entry system maintained by Treasury for purchasing and holding marketable Treasury securities as book-entry

account to be payable on death (POD) to Mr. Green. Compl. ¶ 4 (facts section).[3] On August 13, 2008, Ms. Spiegel executed a durable power of attorney appointing her nephew, Mark Samuels, as her attorney-in-fact. DA22.[4]

On September 25, 2008, Mr. Samuels submitted, on Ms. Spiegel's behalf and as her attorney-in-fact, a request for Ms. Spiegel's account to be renamed to remove Mr. Green's name as a POD beneficiary, DA25-27. The Bureau of the Fiscal Service in Parkersburg, West Virginia, processed the request and the name of the account was updated by October 14, 2008, according to a 2:14 p.m. Eastern Time computer print-out from that office. DA28. Ms. Spiegel died in Los Angeles County, California on October 14, 2008 at 12:30 p.m. Pacific Time, or 3:30 p.m. Eastern Time. DA29; *see also* Compl. ¶ 2.

---

products." 31 C.F.R. § 357.0(a)(2); *see generally* TreasuryDirect.gov, Legacy Treasury Direct, http://www.treasurydirect.gov/indiv/myaccount/myaccount_legacytd.htm (last visited Dec. 2, 2013)

[3] The complaint includes two paragraphs designated as paragraph number four. This citation is to the second paragraph number four, found in the "Facts" section of the complaint.

[4] "DA__" refers to pages in the appendix to this brief. The appendix contains four documents: (1) Ms. Spiegel's power of attorney; (2) the transaction request to change the name of Ms. Spiegel's account; (3) a computer print-out from the Bureau of the Fiscal Service in Parkersburg, West Virginia at 2:17 p.m. Eastern Time on October 14, 2008; and (4) Ms. Spiegel's death certificate. In deciding a RCFC 12(b)(6) motion, the Court may consider the death certificate because it is a public record, and the power of attorney and transaction request because they are referenced in the complaint, Compl. ¶ 9. *See Terry v. United States*, 103 Fed. Cl. 645, 652 (2012). Although Mr. Green does not appear to allege that the change in account name occurred after Ms. Spiegel's death, to the extent his complaint is based upon such an allegation, the computer print-out from the Bureau of the Fiscal Service is integral to the allegations in the complaint and may be considered by the Court without converting a RCFC 12(b)(6) motion to a summary judgment motion, if its authenticity is not disputed. *See AstraZeneca Pharm. LP v. Apotex Corp.*, 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)); *Bell/Heery v. United States*, 106 Fed. Cl. 300, 308 (2012). Moreover, for purposes of RCFC 12(b)(1), the Court may inquire into jurisdiction facts. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991).

According to Mr. Green, "Mark Samuels . . . from his home in Florida wrongfully initiated a plan to interfere with Ms. Spiegel's fixed intention to leave the Account to plaintiff upon her death." Compl. ¶ 5. Mr. Green claims that, "on or about September 25, 2008, Samuels used Ms. Spiegel's purported durable power of attorney and wrongfully changed the registration on the Account to Ms. Spiegel's Trust of which Samuels and Bautista are substantial purported beneficiaries, thereby revoking the pay on death clause to plaintiff, and reducing plaintiff's inheritance by two-thirds." *Id.* ¶ 9.

Mr. Green sued Mr. Samuels for tortious inference. *Id.* ¶ 19. After reaching an agreement with Mr. Samuels as to how to divide the proceeds from Ms. Spiegel's account and settling the case between the two of them, *see id.*, Mr. Green then brought this action in an attempt to recover more money from the United States.

## ARGUMENT

Mr. Green never possessed any ownership rights with respect to Ms. Spiegel's account. His complaint fails to identify a viable basis for jurisdiction in this Court or a plausible claim against the United States. The Court should dismiss the complaint.

## I.    Legal Standards

### A.    RCFC 12(b)(1)

When a motion to dismiss under RCFC 12(b)(1) challenges the Court's subject-matter jurisdiction, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Undisputed factual allegations contained in the complaint must be treated as true. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, in resolving disputes regarding jurisdictional facts, the Court may look beyond the pleadings. *See Rocovich v. United States*,

933 F.2d 991, 993 (Fed. Cir. 1991). If the Court finds that it lacks subject-matter jurisdiction, it must dismiss the complaint. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "Regardless of a party's characterization of its claim," the Court must "look to the true nature of the action in determining the existence or not of jurisdiction." *Pines Residential Treatment Center, Inc. v. United States*, 444 F.3d 1379, 1380 (Fed. Cir. 2006).

**B.   RCFC 12(b)(6)**

A motion under RCFC 12(b)(6) "challenges the legal theory of the complaint." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). Its purpose is to "allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). To avoid dismissal for failure to state a claim, the complaint must sufficiently allege facts that plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009). "In ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States,* 558 F.3d 1331, 1335 (Fed. Cir. 2009).

**II.   The Court Should Dismiss The Complaint For Lack Of Jurisdiction**

The Tucker Act, 28 U.S.C. § 1491, grants this Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). Mr. Green does not allege that he had a contract

with the United States. Nor has he identified any money-mandating statute, regulation, or constitutional provision requiring the payment he seeks. *See United States v. Testan*, 424 U.S. 392, 400 (1976).

Mr. Green alleges that the Government's approval of the change in "registration was in violation of 31 C.F.R. [§ 357.]13(a)." Compl. ¶ 29. He also cites 31 C.F.R. § 13(b), which we understand as a reference to 31 C.F.R. § 357.13(b). Compl. ¶¶ 30-31. These provisions, 31 C.F.R. § 357.13(a)-(b), address Government obligations with respect to book-entry securities held in the commercial book-entry system; they are inapplicable to the Legacy Treasury Direct Account described in the complaint. 31 C.F.R. § 357.0(a)(2). Legacy Treasury Direct accounts are governed by subpart C of part 357 of title 31 of the Code of Federal Regulations, *id.*, or 31 C.F.R. §§ 357.20 to 357.32.

Under 31 C.F.R. § 357.21(b)(2)(iii), POD registration creates "ownership rights in the beneficiary only if the beneficiary survives the owner. During an owner's lifetime, a transaction request may be executed by the owner without the consent of the beneficiary." 31 C.F.R. § 357.21(b)(2)(iii). Accordingly, Mr. Green had no ownership rights regarding Ms. Spiegel's account before the time Ms. Speigel died. At the time Ms. Spiegel died, on October 14, 2008 at 12:30 p.m. Pacific Time, Mr. Green cannot have acquired any ownership rights because he was not listed as a POD beneficiary for Ms. Spiegel's account. Thus, at no time did Mr. Green possess any ownership rights with respect to the account at issue. *See* 31 C.F.R. § 357.21(a)(1) ("Registration of a security conclusively establishes ownership").

Mr. Green states that the United States "disregarded [California] state law in allowing the change of beneficiary, a proximate result of its mistake, error, and financial negligence." Compl. ¶ 10. However, this Court does not possess jurisdiction to entertain negligence claims. *Cottrell*

*v. United States*, 42 Fed. Cl. 144, 149 (1998) ("The court does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties.").

Mr. Green also alleges that the United States failed to ensure Mr. Samuels's compliance with a variety of provisions of the California Probate Code. Compl. ¶¶ 20-24, 27 ("defendant . . . disregarded all of these duties of California state statutory law"). The relevance of these allegations is unclear, however. This Court does not possess authority to entertain claims based upon state law. 28 U.S.C. § 1491; *see also* U.S. Const. Art. VI, cl. 2 (Supremacy Clause). Moreover, Federal regulation provides that the Treasury

> may rely on the information provided in a tender, transaction request form, or Transfer Message, and [is] not required to verify the information. The Department . . . shall not be liable for any action taken in accordance with the information set out in a tender, transaction request form, or Transfer Message, or evidence submitted in support thereof.

31 C.F.R. § 357.42.

Mr. Green alleges that his "claim is also governed by the Fifth Amendment to the United States Constitution, which provides in pertinent part that no person shall be deprived of life, liberty, or property, without due process of law." Compl. ¶ 2. However, the portion of the Fifth Amendment that Mr. Green identifies as pertinent to his complaint — the Due Process Clause — is not the portion of the Fifth Amendment under which this Court can exercise jurisdiction. *See Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1334 (Fed. Cir. 2006) ("A violation of due process rights, however, does not give rise to a claim for money damages against the United States in the Court of Federal Claims."); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

Moreover, even if Mr. Green had not identified the Due Process Clause as the pertinent clause, the complaint is insufficient to invoke this Court's takings jurisdiction under the Fifth Amendment because the pleading does not identify any cognizable property interest that he alleges has been taken by the United States.

## III.    The Court Should Dismiss The Complaint For Failure To State A Claim

Even if Mr. Green's complaint were deemed to sufficiently allege a Fifth Amendment takings claim within this Court's jurisdiction, which it does not, the complaint should nonetheless be dismissed under RCFC 12(b)(6) for failure to state a claim. When evaluating a takings claim, the Court must determine, "as a threshold matter, . . . whether the claimant has established a property interest for purposes of the Fifth Amendment." *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004). In the absence of a cognizable property interest, the takings analysis can proceed no further, and the complaint must be dismissed. *See Meyers v. United States*, 96 Fed. Cl. 34, 62 (2010).

As discussed above, regulation establishes that POD registration does not create ownership rights before the account holder's death. 31 C.F.R. § 357.21(b)(2)(iii). Thus, Mr. Green cannot, as a POD beneficiary, have possessed a cognizable property interest regarding Ms. Spiegel's account before her death. At the time of Ms. Spiegel's death, Mr. Green was not listed as a POD beneficiary. Thus, Mr. Green cannot have possessed any cognizable property interest in the proceeds from Ms. Spiegel's account at or after her death.

Because Mr. Green cannot identify a cognizable property interest for purposes of a Fifth Amendment takings claim, his complaint should be dismissed under RCFC 12(b)(6), if it is not dismissed for lack of jurisdiction under RCFC 12(b)(1).

.

16

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the complaint.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

BRYANT G. SNEE
Acting Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

LISA MARTIN
Bureau of the Fiscal Service
Office of the Chief Counsel
U.S. Department of the Treasury
200 Third Street
Parkersburg, WV 26106

s/Daniel B. Volk
DANIEL B. VOLK
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-7955
Facsimile: (202) 307-0972
Daniel.B.Volk@usdoj.gov

December 2, 2013

Attorneys for Defendant

# APPENDIX

## CONTENTS OF APPENDIX

Power of Attorney, August 13, 2008 ......................................................................................DA1

Transaction Request, September 25, 2008..............................................................................DA25

Computer Print Out, Bureau of Fiscal Service, Parkersburg, WV, October 14, 2008. ...........DA28

Death Certificate, October 14, 2008. ....................................................................................DA29

DURABLE POWER OF ATTORNEY
FOR MANAGEMENT OF PROPERTY AND PERSONAL AFFAIRS

**Table of Contents**

ARTICLE ONE
  POWERS
  Real Property Transactions ................................................. 1
  Tangible Personal Property Transactions ................................... 3
  Stock and Bond Transactions ............................................... 4
  Commodity and Option Transactions ........................................ 4
  Banking and Other Financial Institution Transactions ...................... 4
  Business Operating Transactions ........................................... 6
  Insurance and Annuity Transactions ........................................ 7
  Retirement Plan Transactions .............................................. 9
  Estate, Trust, or Other Beneficiary Transactions .......................... 9
  Power to Modify, Revoke, or Transfer Assets to Existing Trust ............. 10
  Resignation From Fiduciary Positions ..................................... 11
  Claims and Litigation .................................................... 11
  Tax Matters .............................................................. 12
  Personal and Family Maintenance .......................................... 13
  Gifts .................................................................... 15
  Government Benefits ...................................................... 15
  Power to Nominate Conservator ............................................ 16
  Incidental Powers ........................................................ 16

ARTICLE TWO
  AMPLIFYING PROVISIONS
  Reimbursement for Costs and Expenses ..................................... 18
  Reasonable Compensation .................................................. 18
  Reliance by Third Parties ................................................ 18
  Ratification ............................................................. 19
  Exculpation of My Attorney in Fact ....................................... 19
  Revocation and Amendment ................................................. 19

ARTICLE THREE
  GENERAL PROVISIONS
  Signature of Attorney in Fact ............................................ 20
  Photostatic Copies ....................................................... 20
  Severability ............................................................. 20
  Governing Law ............................................................ 20
  Explanation of Durable Power for Property Management ..................... 20

## DURABLE POWER OF ATTORNEY

## FOR MANAGEMENT OF PROPERTY AND PERSONAL AFFAIRS

I, Ann C. Spiegel, a resident of Los Angeles County, California, appoint Mark Samuels of 2551 Hanlon Terrace, The Villages, Florida 32162, whose telephone number is (847) 767-7921, as my attorney in fact, referred to in this power of attorney as "my attorney in fact."

I intend to create a Durable Power of Attorney (herein referred to as "this Power") pursuant to California Probate Code Section 4000 and following, specifically including the Uniform Durable Power of Attorney Act but specifically not including Section 4600 and following relating to health care. This Power is effective immediately upon its execution and shall not be affected by my subsequent disability or incapacity.

I give my attorney in fact the powers in Article One and elsewhere in this Power with the understanding that they will be used for my benefit and on my behalf and will be exercised only in a fiduciary capacity.

## ARTICLE ONE

## POWERS

1.1. <u>Real Property Transactions</u>. I give my attorney in fact all of the powers listed below in this paragraph. All of the powers described in this paragraph are exercisable equally with respect to any interest in real property that I own when this Power is executed or that is acquired thereafter, whether the real property is located in this state or elsewhere.

(a) <u>Acquisition</u>. Accept as a gift or as security for a loan, reject, demand, buy, lease, receive, or otherwise acquire an interest in real property or a right incident to real property.

(b) <u>Transfer</u>. Sell, exchange, convey with or without covenants, quitclaim,

release, surrender, mortgage, encumber, partition or consent to the partitioning of, subdivide, apply for zoning, rezoning, or other governmental permits, plat or consent to platting, develop, grant options concerning, lease, sublease, or otherwise dispose of an interest in real property or a right incident to real property.

(c) Mortgages. Release, assign, satisfy, and enforce by litigation or otherwise, a mortgage, deed of trust, encumbrance, lien, or other claim to real property that exists or is asserted.

(d) Management. Do an act of management or conservation with respect to an interest in real property, or a right incident to real property, owned or claimed to be owned by me, including all of the following:

> (1) Insuring against a casualty, liability, or loss.

> (2) Obtaining or regaining possession, or protecting the interest or right, by litigation or otherwise.

> (3) Paying, compromising, or contesting taxes or assessments, or applying for and receiving refunds in connection with taxes or assessments.

> (4) Purchasing supplies, hiring assistance or labor, and making repairs or alterations in the real property.

(e) Improvements. Use, develop, alter, replace, remove, erect, or install structures or other improvements upon real property in or incident to which I have, or claim to have, an interest or right.

(f) Reorganizations. Participate in a reorganization with respect to real property or a legal entity that owns an interest in or right incident to real property and receive and hold shares of stock or obligations received in a plan of reorganization, and act with respect to them, including all of the following:

> (1) Selling or otherwise disposing of them.

> (2) Exercising or selling an option, conversion, or similar right with respect to them.

> (3) Voting them in person or by proxy.

(g) Change in Form of Title. Change the form of title of an interest in or right incident to real property, including the creation or change in survivorship interests in the property I own or in property in which I have an interest.

(h) Public Use. Dedicate to public use, with or without consideration, easements or other real property in which I have, or claim to have, an interest or right.

1.2. Tangible Personal Property Transactions. I give my attorney in fact all of the powers listed below in this paragraph. All of the powers described in this paragraph are exercisable equally with respect to any tangible personal property that I own when this Power is executed or that is acquired thereafter, whether the personal property is located in this state or elsewhere.

(a) Acquisition. Accept as a gift or as security for a loan, reject, demand, buy, receive, or otherwise acquire ownership or possession of tangible personal property or an interest in tangible personal property.

(b) Transfer. Sell, exchange, convey with or without covenants, release, surrender, mortgage, encumber, pledge, hypothecate, create a security interest in, pawn, grant options concerning, lease, sublease to others, or otherwise dispose of tangible personal property or an interest in tangible personal property.

(c) Security Interests. Release, assign, satisfy, or enforce by litigation or otherwise, a mortgage, security interest, encumbrance, lien, or other claim on my behalf, with respect to tangible personal property or an interest in tangible personal property.

(d) Management. Do an act of management or conservation with respect to tangible personal property or an interest in tangible personal property on my behalf, including all of the following:

(1) Insuring against casualty, liability, or loss.

(2) Obtaining or regaining possession, or protecting the property or interest, by litigation or otherwise.

(3) Paying, compromising, or contesting taxes or assessments, or applying for and receiving refunds in connection with taxes or assessments.

(4) Moving from place to place.

(5) Storing for hire or on a gratuitous bailment.

(6) Using, altering, and making repairs or alterations.

1.3. <u>Stock and Bond Transactions</u>. I give my attorney in fact all of the powers listed below in this paragraph. All of the powers described in this paragraph are exercisable equally with respect to any interest in any stock, bond, mutual fund, and other type of security to which this paragraph refers, that I own when this Power is executed or that is acquired thereafter, whether located in this state or elsewhere.

> (a) <u>Acquisition and Transfer</u>. Buy, sell, and exchange stocks, bonds, mutual funds, and all other types of securities and financial instruments except commodity futures contracts and call and put options on stocks and stock indexes.

> (b) <u>Evidence of Ownership</u>. Receive certificates and other evidence of ownership with respect to securities.

> (c) <u>Voting</u>. Exercise voting rights with respect to securities, in person or by proxy, enter into voting trusts, and consent to limitations on the right to vote.

1.4. <u>Commodity and Option Transactions</u>. I give my attorney in fact all of the powers listed below in this paragraph. All of the powers described in this paragraph are exercisable equally with respect to any interest in any commodity futures contract or option to which this paragraph refers, that I own when this Power is executed or that is acquired thereafter, whether located in this state or elsewhere.

> (a) <u>Acquisition and Transfer</u>. Buy, sell, exchange, assign, settle, and exercise commodity futures contracts and call and put options on stocks and stock indexes traded on a regulated option exchange.

> (b) <u>Accounts</u>. Establish, continue, modify, and terminate option accounts with a broker.

1.5. <u>Banking and Other Financial Institution Transactions</u>. I give my attorney in fact all of the powers listed below in this paragraph. All powers described in this paragraph are

exercisable equally with respect to any financial transaction to which this paragraph refers, engaged in by me when this Power is executed or that is engaged in thereafter, whether conducted in this state or elsewhere.

(a) Existing Accounts. Continue, modify, and terminate an account or other banking arrangement made by me or on my behalf.

(b) Opening of Accounts. Establish, modify, and terminate an account or other banking arrangement with a bank, trust company, savings and loan association, credit union, thrift company, industrial loan company, brokerage firm, or other financial institution selected by my attorney in fact.

(c) Establishing and Closing Safe Deposit Boxes. Hire or close a safe deposit box or space in a vault.

(d) Contracting Services. Contract to procure other services available from a financial institution as my attorney in fact considers desirable.

(e) Making Withdrawals. Withdraw by check, order, or otherwise my money or property deposited with or left in the custody of a financial institution.

(f) Receiving Financial Statements. Receive bank statements, vouchers, notices, and similar documents from a financial institution, and act with respect to them.

(g) Entering Safe Deposit Boxes. Enter a safe deposit box or vault and withdraw or add to the contents.

(h) Borrowing Money. Borrow money at an interest rate agreeable to my attorney in fact and pledge as security my personal property as necessary in order to borrow, pay, renew, or extend the time of payment of any of my debts.

(i) Checks, Drafts, and Negotiable or Nonnegotiable Paper. Make, assign, draw, endorse, discount, guarantee, and negotiate promissory notes, checks, drafts, and other negotiable or nonnegotiable paper of mine, or payable to me or to my order, receive the cash or other proceeds of those transactions, and accept a draft drawn by a person upon me and pay it when due.

(j) Receiving Negotiable or Nonnegotiable Instruments. Receive for me and act upon a sight draft, warehouse receipt, or other negotiable or nonnegotiable instrument.

(k) <u>Letters of Credit, Credit Cards, and Travelers Checks</u>. Apply for and receive letters of credit, credit cards, and traveler's checks from a financial institution, and give an indemnity or other agreement in connection with letters of credit.

(l) <u>Extensions to Pay</u>. Consent to an extension of the time of payment with respect to commercial paper or a financial transaction with a financial institution.

1.6. <u>Business Operating Transactions</u>. I give my attorney in fact all of the powers listed below in this paragraph. All powers described in this paragraph are exercisable equally with respect to any business in which I am interested when this Power is executed or in which I become interested thereafter, whether conducted in this state or elsewhere.

(a) <u>Operation and Transfer</u>. Operate, buy, sell, enlarge, reduce, and terminate a business interest.

(b) <u>Partnerships and Limited Liability Companies</u>. To the extent that an agent is permitted by law to act for a principal, member or manager and subject to the terms of the partnership agreement or LLC operating agreement:

(1) Perform a duty or discharge a liability and exercise a right, power, privilege, or option that I have, may have, or claim to have under a partnership agreement or LLC operating agreement, whether or not I am a partner, member or manager.

(2) Enforce the terms of a partnership agreement or LLC operating agreement by litigation or otherwise.

(3) Defend, submit to arbitration, settle, or compromise litigation to which I am a party because of membership in the partnership or LLC.

(c) <u>Bonds, Shares, and Other Instruments</u>. Exercise in person or by proxy, or enforce by litigation or otherwise, a right, power, privilege, or option that I have or claim to have as the holder of a bond, share, or other instrument of similar character, and defend, submit to arbitration, settle, or compromise litigation to which I am a party because of a bond, share, or similar instrument.

(d) <u>Sole Proprietorship</u>. With respect to any business that I solely own:

(1) Continue, modify, renegotiate, extend, and terminate a contract made with an individual or a legal entity, firm, association, or corporation by me

or on my behalf with respect to the business before execution of this Power.

(2) Determine the policy of the business as to (A) the location of its operation; (B) the nature and extent of its business; (C) the methods of manufacturing, selling, merchandising, financing, accounting, and advertising employed in its operation; (D) the amount and types of insurance carried; and (E) the mode of engaging, compensating, and dealing with its accountants, attorneys, and other agents and employees.

(3) Change the name or form of organization under which the business is operated, and enter into a partnership agreement with other persons or organize a corporation to take over all or part of the operation of the business.

(4) Demand and receive money due or claimed by me or on my behalf in the operation of the business, and control and disburse the money in the operation of the business.

(e) <u>Expansion</u>. Put additional capital into a business in which I have an interest.

(f) <u>Reorganization</u>. Join in a plan of reorganization, consolidation, or merger of the business.

(g) <u>Sale or Liquidation</u>. Sell or liquidate a business or part of it at the time and upon the terms my attorney in fact considers desirable.

(h) <u>Buy-Out Agreements</u>. Represent me in establishing the value of a business under a buy-out agreement to which I am a party.

(i) <u>Reports</u>. Prepare, sign, file, and deliver reports, compilations of information, returns, or other papers with respect to a business that are required by a governmental agency or instrumentality or that my attorney in fact considers desirable, and make related payments.

(j) <u>Taxes</u>. Pay, compromise, or contest taxes or assessments and do any other act that my attorney in fact considers desirable to protect me from illegal or unnecessary taxation, fines, penalties, or assessments with respect to a business, including attempts to recover, in any manner permitted by law, money paid before or after this Power is executed.

1.7. <u>Insurance and Annuity Transactions</u>. I give my attorney in fact all of the powers

.

listed below in this paragraph. All powers described in this paragraph are exercisable with respect to any contract of insurance or annuity in which I am in any way interested, whether made in this state or elsewhere.

(a) Existing Personal Coverage. Continue, pay the premium or assessment on, modify, rescind, release, or terminate any contract procured by me or on my behalf that insures or provides an annuity to either me or another person, whether or not I am a beneficiary under the contract.

(b) Procuring New Coverage. Procure new, different, and additional contracts of insurance and annuities for me and my dependents, and select the amount, type of insurance or annuity, and mode of payment.

(c) Paying Premiums for New Coverage. Pay the premium or assessment on, modify, rescind, release, or terminate a contract of insurance or annuity procured by my attorney in fact.

(d) Beneficiary Designation. Designate the beneficiary of the contract, including the power to designate himself as the beneficiary of the contract, or an extension, renewal, or substitute for the contract, regardless of whether the contract was procured by me or by my attorney in fact.

(e) Borrowing. Apply for and receive a loan on the security of the contract of insurance or annuity.

(f) Surrendering. Surrender and receive the cash surrender value.

(g) Elections. Exercise an election.

(h) Manner of Paying Premiums. Change the manner of paying premiums.

(i) Conversion. Change or convert the type of insurance contract or annuity as to any insurance contract or annuity to which I have or claim to have a power described in this paragraph.

(j) Beneficiary Change. Change the beneficiary of a contract of insurance or annuity, including the power to designate himself as the beneficiary, regardless of whether the contract of insurance or annuity was procured by me or by my attorney in fact.

(k) Governmental Aid. Apply for and procure government aid to guarantee or

pay premiums of a contract of insurance on my life.

(l) <u>Transfer</u>. Collect, sell, assign, hypothecate, borrow upon, or pledge my interest in a contract of insurance or annuity.

(m) <u>Taxes</u>. Pay from proceeds or otherwise, compromise or contest, and apply for refunds in connection with, a tax or assessment levied by a taxing authority with respect to a contract of insurance or annuity or its proceeds or liability accruing by reason of the tax or assessment.

1.8. <u>Retirement Plan Transactions</u>. I give my attorney in fact all of the powers listed below in this paragraph. All powers described in this paragraph are exercisable with respect to any retirement plan in which I am in any way interested, whether the plan is in this state or elsewhere.

(a) <u>Select Payment Options</u>. Select payment options under any retirement plan in which I participate, including plans for self-employed individuals, including the power to designate himself as the beneficiary.

(b) <u>Beneficiary Designations</u>. Designate beneficiaries under retirement plans and change existing designations, including the power to designate himself as the beneficiary.

(c) <u>Voluntary Contributions</u>. Make voluntary contributions to retirement plans.

(d) <u>Investment Powers</u>. Exercise the investment powers available under any self-directed retirement plan.

(e) <u>Rollovers</u>. Make rollovers of plan benefits into other retirement plans.

(f) <u>Borrow, Buy, and Sell</u>. If authorized by the plan, borrow from, sell assets to, and purchase assets from the plan.

(g) <u>Waiver of Spousal Rights</u>. Waive my right to be a beneficiary of a joint or survivor annuity if I am a spouse who is not employed.

1.9. <u>Estate, Trust, or Other Beneficiary Transactions</u>. I give my attorney in fact all of the powers listed below in this paragraph so that my attorney in fact may act for me in all matters

that affect a trust, probate estate, guardianship, conservatorship, escrow, custodianship, or other

fund from which I am, may become, or claim to be entitled, as a beneficiary, to a share or

payment, whether such matters deal with property located in this state or elsewhere. The powers

described in this paragraph do not include the power to create, modify, or revoke trusts.

(a) Payments. Accept, reject, disclaim, receive, receipt for, sell, assign, release, pledge, exchange, or consent to a reduction in or modification of a share in or payment from the fund.

(b) Claims. Demand or obtain by litigation or otherwise money or other thing of value to which I am, may become, or claim to be entitled by reason of the fund.

(c) Participation in Proceedings. Initiate, participate in, and oppose litigation to ascertain the meaning, validity, or effect of a deed, will, declaration of trust, or other instrument or transaction affecting my interest.

(d) Removal of Fiduciary. Initiate, participate in, and oppose litigation to remove, substitute, or surcharge a fiduciary.

(e) Investments and Disbursements. Conserve, invest, disburse, and use anything received for an authorized purpose.

(f) Transfer to Revocable Trust. Transfer an interest of mine in real property, stocks, bonds, accounts with financial institutions, insurance, and other property to the trustee of a revocable trust created by me as settlor.

(g) Contingent Interests. Convey or release any contingent or expectant interests in property, including marital property rights, and any rights of survivorship incident to joint tenancy or tenancy by the entirety.

(h) Probate Code Section 13502 or 13503 Election. Make any election or election and agreement referred to in California Probate Code Section 13502 or 13503.

1.10. Power to Modify, Revoke, or Transfer Assets to Existing Trust. I give my attorney

in fact the power to transfer any asset in which I have an interest to the trustee then acting under

the trust instrument executed by me on August 13, 2008, and exercise in whole or in part, release,

or let lapse any power I may have as settlor under that instrument, including any power of appointment, amendment, revocation, withdrawal of assets, voting or directing the voting of shares of stock, managing or directing the investments subject to the trust, borrowing assets from the trust, and removing the trustee, but subject to the limitation that the trust may be modified or revoked by my attorney in fact only if it is expressly permitted by the terms of the trust instrument that are in effect at the time the modification or revocation is to be made.

1.11. <u>Resignation From Fiduciary Positions</u>. *I give my attorney in fact the power to* resign from any fiduciary position to which I have been or may be in the future named, appointed, nominated, or elected, including by way of illustration, but not of restriction, the positions of executor, administrator, personal representative, trustee, attorney in fact, guardian, director or officer of a corporation, or governmental position or office; and to take whatever steps are necessary to accomplish such resignation, for example, by rendering an accounting or appearing in court to receive approval for such action, as appropriate.

1.12. <u>Claims and Litigation</u>. *I give my attorney in fact all of the powers listed below in* this paragraph. All powers described in this paragraph are exercisable equally with respect to any claim or litigation existing when this Power is executed or arising thereafter, whether existing or arising in this state or elsewhere.

    (a) <u>Actions</u>. Assert and prosecute before a court or administrative agency a claim, claim for relief, cause of action, counterclaim, cross-complaint, or offset, and defend against an individual, a legal entity, or government, including suits to recover property or other thing of value, to recover damages sustained by me, to eliminate or modify tax liability, or to seek an injunction, specific performance, or other relief.

    (b) <u>Intervention and Interpleader</u>. Bring an action to determine adverse claims, intervene in litigation, and act as amicus curiae.

     **(c) Provisional Remedies, Enforcement of Judgments, and Participation in Proceedings.** In connection with litigation:

        **(1)** Procure an attachment, garnishment, libel, order of arrest, or other preliminary, provisional, or intermediate relief, and use any available procedure to effect, enforce, or satisfy a judgment, order, or decree.

        **(2)** Perform any lawful act, including acceptance of tender, offer of judgment, admission of facts, submission of a controversy on an agreed statement of facts, consent to examination before trial, and binding me in litigation.

     **(d) Settlement.** Submit to arbitration, settle, and propose or accept a compromise with respect to a claim or litigation.

     **(e) Procedure.** Waive the issuance and service of process upon me; accept service of process; appear for me; designate persons upon whom process directed to me may be served; execute and file or deliver stipulations on my behalf; verify pleadings; seek appellate review; procure and give surety and indemnity bonds; contract and pay for the preparation and printing of records and briefs; receive and execute and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation.

     **(f) Bankruptcy.** Act for me with respect to bankruptcy or insolvency proceedings, whether voluntary or involuntary, concerning me or some other person, or with respect to a reorganization proceeding, or with respect to an assignment for the benefit of creditors, receivership, or application for the appointment of a receiver or trustee, that affects an interest of mine in property or other thing of value.

     **(g) Payments.** Pay a judgment against me or a settlement made in connection with litigation, and receive and conserve money or other thing of value paid in settlement of or as proceeds of a claim or litigation.

**1.13. Tax Matters.** I give my attorney in fact all of the powers listed below in this

paragraph.

     **(a) Preparation and Filing of Documents.** Prepare, sign, and file federal, state, local, and foreign income, gift, payroll, FICA returns, and other tax returns, claims for refunds, requests for extension of time, petitions regarding tax matters, and any other tax-related documents, including receipts, offers, waivers, consents (including consents and agreements under Internal Revenue Code Section 2032A

or any successor section), closing agreements, and any power of attorney required by the Internal Revenue Service or other taxing authority with respect to any tax year for which the statute of limitations has not run and to the tax year in which this durable power of attorney was executed and any subsequent tax year.

(b) <u>Paying and Contesting Amounts</u>.  Pay taxes due, collect refunds, post bonds, receive confidential information, and contest deficiencies determined by the Internal Revenue Service or other taxing authority.

(c) <u>Exercising Elections</u>.  Exercise any election I may have under federal, state, local, or foreign tax law.

(d) <u>Acting in Tax Matters</u>.  Act for me in all tax matters before the Internal Revenue Service and any other taxing authority.

1.14.  <u>Personal and Family Maintenance</u>.  I give my attorney in fact all of the powers listed below in this paragraph.  All powers described in this paragraph are exercisable equally whether the acts required for their execution relate to property that I own when this Power is executed or that is acquired thereafter, and whether the acts are performed or property is located in this state or elsewhere.  If I have authorized my agent under my power of attorney for health care (advance directive) to provide for my personal care or to make arrangements for a funeral or memorial service and/or burial arrangements for me, my attorney in fact shall pay any expenses incurred as a result of those arrangements as directed by my health care agent, and is hereby released from any and all liability for making those payments.

(a) <u>Support</u>.  Do the acts necessary to maintain my customary standard of living and the customary standard of living of any individuals customarily or legally entitled to my support, including providing living quarters by purchase, lease, or other contract, or paying the operating costs, including interest, amortization payments, repairs, and taxes, on premises owned by me and occupied by my dependents.

(b) <u>Domestic Help, Travel, and Necessities</u>.  Provide for the individuals described in subparagraph (a) all of the following:

(1) Normal domestic help.

(2) Usual vacations and travel expenses.

(3) Funds for shelter, clothing, food, appropriate education, and other current living costs.

(c) <u>Medical Care</u>.  Pay for my medical care as directed by my health care agent under my power of attorney for health care (advance directive), for which payments my attorney in fact shall hereby be released from any and all liability, and pay for the individuals described in subparagraph (a) necessary medical, dental, and surgical care, hospitalization, and custodial care.

(d) <u>Transportation</u>.  Continue any provision made by me, for the individuals described in subdivision (a), for automobiles or other means of transportation, including registering, licensing, insuring, and replacing them.

(e) <u>Charge Accounts</u>.  Maintain or open charge accounts for the convenience of the individuals described in subparagraph (a) and open new accounts my attorney in fact considers desirable to accomplish a lawful purpose.

(f) <u>Church and Organization Affiliations</u>.  Continue payments incidental to my membership in or affiliation with a church, club, society, order, or other organization and continue contributions to those organizations.

(g) <u>Religious or Spiritual Needs</u>.  Continue payments incidental to my membership in religious or other spiritual organizations as directed by my agent under my power of attorney for health care (advance directive), for which payments my attorney in fact shall hereby be released from any and all liability, and pay for my access to their activities and publications, including books, tapes, and similar materials.

(h) <u>Pets</u>.  House, or arrange for the housing, support, and maintenance of, any animals that I own or have custody of and pay reasonable boarding, kenneling, and veterinary fees for such animals, or if the support and maintenance of any such animal becomes unreasonably expensive, to dispose of such animal in a humane fashion, preferably by finding another home for the animal.

(i) <u>Funeral and Burial</u>.  Make payments during my lifetime for my funeral or other memorial service and for burial or cremation of my remains, including the purchase of a burial plot or other place for interment of my remains or ashes, as directed by my agent under my power of attorney for health care (advance directive), for which payments my attorney in fact shall hereby be released from

any and all liability.

1.15. Gifts. I give my attorney in fact the power to make gifts, grants, or other transfers without consideration, of cash or other property, either outright or in trust, including the forgiveness of indebtedness, in accordance with the provisions in this paragraph.

 (a) Attorney in Fact's Discretion. Gifts may be made to those persons and organizations as my attorney in fact in his discretion chooses.

 (b) Gifts to Attorney in Fact Limited to "5 or 5" Amount With Annual Exclusion Limitation. Notwithstanding any other provision in this paragraph, my attorney in fact may make gifts to himself, but any such gifts may not exceed in any calendar year the greater of five thousand dollars ($5,000) or five (5) percent of the assets subject to this Power; however, if a gift made pursuant to the five (5) percent provision would cause the imposition of a federal gift tax on the principal because the aggregate amount of any gifts made in any one calendar year to my attorney in fact would, but for this limitation, exceed the amount that may be made free of federal gift tax to him, then the amount of any gifts in any calendar year to my attorney in fact shall not exceed the amount that may be made free of federal gift tax to him.

 (c) Limitation to Amount of Federal Annual Gift Tax Exclusion. Any gifts made pursuant to this paragraph shall not be future interests within the meaning of Internal Revenue Code Section 2503, and the aggregate amount of any gifts made in any one calendar year to an individual shall not exceed the amount that may be made free of federal gift tax to a person. The limitations in the preceding sentence shall not apply to any gifts that incur no federal gift tax, such as, for example, gifts that qualify for the unlimited federal marital gift tax deduction or the charitable deduction.

1.16. Government Benefits. I give my attorney in fact all of the powers listed below in this paragraph. All powers described in this paragraph are exercisable equally with respect to benefits from social security, medicare, medicaid, or other governmental programs, or civil or military service, existing when this Power is executed or accruing thereafter, whether existing or accruing in this state or elsewhere.

 (a) Execution of Vouchers. Execute vouchers in my name for allowances and

reimbursements payable to me by the United States or a foreign government or by a state or subdivision of a state, including allowances and reimbursements for my transportation and transportation of any individuals customarily or legally entitled to my support, and for shipment of our household effects.

(b) Possession of Property. Take possession and order the removal and shipment of my property from a post, warehouse, depot, dock, or other place of storage or safekeeping, either governmental or private; and execute and deliver a release, voucher, receipt, bill of lading, shipping ticket, certificate, or other instrument for that purpose.

(c) Benefits. Prepare, file, and prosecute my claim to a benefit or assistance, financial or otherwise, to which I claim to be entitled under a statute or governmental regulation.

(d) Actions. Prosecute, defend, submit to arbitration, settle, and propose or accept a compromise with respect to any benefits I may be entitled to receive.

(e) Receipt of Proceeds. Receive the financial proceeds of a claim of the type described in this paragraph; conserve, invest, disburse, or use anything received for a lawful purpose.

1.17. Power to Nominate Conservator. If at any time proceedings are initiated for the appointment of a conservator of my person or my estate or both, I authorize my attorney in fact to nominate whomever in his discretion he believes appropriate as conservator of my estate, including himself, and whomever in his discretion he believes appropriate as conservator of my person, including himself. I authorize my attorney in fact to waive the requirement of a bond for any person appointed, if in his discretion he believes such a waiver is appropriate.

1.18. Incidental Powers. In connection with the exercise of any of the powers described in the preceding paragraphs, I give my attorney in fact all of the powers listed below in this paragraph. All powers described in this paragraph are exercisable equally with respect to any of my interests, rights, and obligations existing when this Power is executed or arising thereafter, whether in this state or elsewhere.

(a) <u>Claims</u>. Demand, receive, and obtain by litigation or otherwise, money or other thing of value to which I am, may become, or claim to be entitled; and conserve, invest, disburse, or use anything so received for the purposes intended.

(b) <u>Contracts</u>. Contract in any manner with any person, on terms agreeable to my attorney in fact, to accomplish a purpose of a transaction, and perform, rescind, reform, release, or modify the contract or another contract made by me or on my behalf.

(c) <u>Execution, Acknowledgment, and Delivery</u>. Execute, acknowledge, seal, and deliver a deed, revocation, mortgage, lease, notice, check, release, or other instrument my attorney in fact considers desirable to accomplish a purpose of a transaction.

(d) <u>Actions</u>. Prosecute, defend, submit to arbitration, settle, and propose or accept a compromise with respect to a claim existing in my favor or against me or intervene in litigation relating to the claim.

(e) <u>Court Assistance</u>. Seek on my behalf the assistance of a court to carry out an act authorized by this Power.

(f) <u>Employment</u>. Engage, compensate, and discharge an attorney, accountant, expert witness, or other assistant.

(g) <u>Recordkeeping</u>. Keep appropriate records of each transaction, including an accounting of receipts and disbursements.

(h) <u>Preparation and Filing of Documents</u>. Prepare, execute, and file a record, report, or other document my attorney in fact considers desirable to safeguard or promote my interest under a statute or governmental regulation.

(i) <u>Other Lawful Acts</u>. In general, do any other lawful acts with respect to the power being exercised, it being my intention that, in connection with the exercise of that power, my attorney in fact shall have full authority, to the extent that a principal can act through an agent, to take all actions that he believes necessary, proper, or convenient, to the extent that I could take such actions myself.

## ARTICLE TWO

## AMPLIFYING PROVISIONS

2.1. <u>Reimbursement for Costs and Expenses</u>. My attorney in fact shall be entitled to reimbursement from my property for expenditures properly made in the execution of any of the powers conferred by me in this Power. My attorney in fact shall keep records of any such expenditures and reimbursement.

2.2. <u>Reasonable Compensation</u>. My attorney in fact shall be entitled to reasonable compensation for the services rendered in the execution of any of the powers conferred by me in this Power. The factors that should be taken into account in determining the amount of compensation shall be the time expended by my attorney in fact, the value of the property over which my attorney in fact exercises control and management, and the complexity of the transaction entered into by my attorney in fact in functioning under this Power. My attorney in fact may make the payment of such amount from my assets every month, and shall keep records that include the amount of time spent in performing the services, a description of the services performed, and the amount of compensation paid to himself for each such time period.

2.3. <u>Reliance by Third Parties</u>. To induce third parties to act in accordance with the powers granted to my attorney in fact in this document, I represent and warrant that:

    (a) If this document is revoked or amended for any reason, I, my estate, my heirs, successors, and assigns will hold any third party harmless from any loss suffered, or liability incurred, by the third party in acting in accordance with this document before the third party's receipt of written notice of termination or amendment.

    (b) The powers conferred on my attorney in fact may be exercised alone and my attorney in fact's signature or act under the authority granted in this document may be accepted by third parties as fully authorized by me and with the same force and effect as if I were personally present, competent, and acting on my own behalf.

(c) No person who acts in reliance upon any representation of my attorney in fact as to the scope of my attorney in fact's authority granted under this document shall incur any liability to me, my estate, my heirs, successors, or assigns for permitting my attorney in fact to exercise any such power, nor shall any person who deals with my attorney in fact be responsible to determine or ensure the proper application of funds or property.

(d) My attorney in fact shall make any payments required for the provision and/or release of information or photocopies of any records to my agent under my power of attorney for health care (advance directive) regarding my personal affairs or my physical or mental health, including medical, dental, and hospital records, as directed by my health care agent. My attorney in fact shall hereby be released from any and all liability for making any such payments.

2.4. <u>Ratification</u>. I ratify and confirm all that my attorney in fact does or causes to be done under the authority granted in this Power. All contracts, promissory notes, checks, or other bills of exchange, drafts, other obligations, stock powers, instruments, and other documents signed, endorsed, drawn, accepted, made, executed, or delivered by my attorney in fact shall bind me, my estate, my heirs, successors, and assigns.

2.5. <u>Exculpation of My Attorney in Fact</u>. My attorney in fact shall not be liable to me or any of my successors in interest for any action taken or not taken in good faith, but shall be liable for any willful misconduct or gross negligence.

2.6. <u>Revocation and Amendment</u>. I revoke all prior General Powers of Attorney that I may have executed and I retain the right to revoke or amend this document and to substitute other attorneys in fact in place of my attorney in fact. Amendments to this document shall be made in writing by me personally (not by my attorney in fact) and they shall be attached to the original of this document and recorded in the same county or counties as the original if the original is recorded.

## ARTICLE THREE

## GENERAL PROVISIONS

3.1. <u>Signature of Attorney in Fact</u>. My attorney in fact shall use the following form when signing on my behalf pursuant to this Power: "Ann C. Spiegel by Mark Samuels, her attorney in fact."

3.2. <u>Photostatic Copies</u>. Persons dealing with my attorney in fact may rely fully on a photostatic copy of this Power.

3.3. <u>Severability</u>. If any of the provisions of this Power are found to be invalid for any reason, such invalidity shall not affect any of the other provisions of this Power, and all invalid provisions shall be wholly disregarded.

3.4. <u>Governing Law</u>. All questions pertaining to validity, interpretation, and administration of this Power shall be determined in accordance with the laws of California.

3.5. <u>Explanation of Durable Power for Property Management</u>. I understand that this Power is an important legal document. Before executing this document, my lawyer explained to me the following:

    (a) This document provides my attorney in fact with broad powers to dispose of, sell, convey, and encumber my real and personal property.

    (b) The powers granted in this Power will exist for an indefinite period of time unless I limit their duration by the terms of this Power or revoke this Power. These powers will continue to exist notwithstanding my subsequent disability or incapacity.

    (c) I have the right to revoke or terminate this Power at any time.

This Durable Power of Attorney is executed by me on *Aug. 13*, *2008*
at *Sherman Oaks*, California.

_Ann C. Spiegel_
Ann C. Spiegel

Acceptance by Attorney in Fact

_Mark Samuels_    Dated: _8/13/08_
Mark Samuels

## ACKNOWLEDGMENT

State of California            )
                                       ) ss

County of _Los Angeles_          )

On _August 13, 2008_ before me, _Kim Cisneros_,

a notary public, personally appeared Ann C. Spiegel, who proved to me on the basis of

satisfactory evidence to be the person whose name is subscribed to the within instrument and

acknowledged to me that she executed the same in her authorized capacity, and that by her

signature on the instrument, the person, or the entity upon behalf of which the person acted,

executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the

foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (SEAL)

> KIM CISNEROS
> Commission # 1761082
> Notary Public - California
> Los Angeles County
> My Comm. Expires Aug 11, 2011

## LAWYER'S CERTIFICATE

I am a lawyer authorized to practice law in the state where this power of attorney was executed, and the principal was my client at the time this power of attorney was executed. I have advised my client concerning her rights in connection with this power of attorney and the applicable law and the consequences of signing or not signing this power of attorney, and my client, after being so advised, has executed this power of attorney.

Dated: _8/12/09_          _____
                          Howard S. Borenstein

Law Firm:     The Law Office of Howard S. Borenstein

Address:      299 W. Foothill Blvd., Ste. 201, Upland, California 91786

Telephone Number:  (909) 984-6305

*The Law Offices of*
## Howard S. Borenstein

Howard S. Borenstein
Certified Specialist - Taxation Law
The State Bar of California
Board of Legal Specialization

299 W. Foothill Blvd
Suite 201
Upland, CA. 91786

*Mailing Address*
P.O. Box 1180
Upland, CA. 91786

(909) 984-6305
*FAX* (909) 984-6405

September 25, 2008

**VIA EXPRESS MAIL**

TREASURY RETAIL SECURITIES SITE
P. O. Box 9150
Minneapolis, Minnesota 55480-9150

     RE:   Legacy Treasury Direct Account Number: ████-7195

To Whom It May Concern:

Enclosed please find an original medallion guaranteed Legacy Treasury Direct Transaction Request regarding the above referenced account. This request involves a name change from **Ann C. Spiegel POD Robert A. Green** to **Ann C. Spiegel, Trustee for the Ann C. Spiegel Revocable Trust dated August 13, 2008.**

This name change request is pursuant to Section 1.10 of the Durable Power of Attorney for Management of Property and Personal Affairs signed by Ann C. Spiegel (copy enclosed) and signed by Mark Samuels as her attorney in fact, pursuant to Section 3.1 of the same document. Also enclosed is a copy of the Ann C. Spiegel Revocable Trust.

Thank you for your prompt attention to this matter. If you have any questions, please do not hesitate to contact my office.

Respectfully,

Howard S. Borenstein

HSB:dl
Enclosures

PD F 5178 E
Department of the Treasury
Bureau of the Public Debt
(Revised April 2008)

**Legacy Treasury Direct®**

**TRANSACTION REQUEST**

OMB No. 1535-0069

**Call us at 1-800-722-2678**

Visit us on the Web at **www.treasurydirect.gov**

**IMPORTANT:** Follow instructions in filling out this form. You should be aware that the making of any false, fictitious, or fraudulent claim or statement to the United States is a crime that is punishable by fine and/or imprisonment.

**PRINT IN INK OR TYPE ALL INFORMATION**

This form will not be accepted if it has any alterations or corrections.

## 1. Legacy Treasury Direct ACCOUNT INFORMATION

Legacy Treasury Direct ACCOUNT NUMBER: ▇▇▇▇ 7195

ACCOUNT NAME: ANN C. SPIEGEL POD ROBERT A. GREEN

## 2. TRANSACTIONS REQUESTED

Mark the box next to each transaction requested and show the information as it should appear on your Legacy Treasury Direct account.

[ ] **CONSOLIDATION OF Legacy Treasury Direct ACCOUNTS - *For identical accounts only.*** Provide the number(s) of the account(s) from which securities are to be moved and the number of the account into which they are to be deposited.

Legacy Treasury Direct *Account Number(s) to be closed:*

⇒

(Surviving Legacy Treasury Direct Account No.)

[X] **NAME CHANGE** - Provide the complete account name as it should appear. This type of change usually requires a certified signature; see items 2 and 3 in the instructions.

ANN C. SPIEGEL, TRUSTEE FOR THE ANN C. SPIEGEL

REVOCABLE TRUST DATED AUGUST 13, 2008

[X] **ADDRESS CHANGE** - Provide the complete address as it should appear. *You can also use our web services at* **www.treasurydirect.gov** *to change your account address.*

2551 Hanlon Terrace

The Villages, Florida 32162

[X] **TELEPHONE NUMBER CHANGE** - Provide each complete number, including extension, if applicable. *You can also use our web services at* **www.treasurydirect.gov** *to change your telephone number.*

(847) 767-7921

(Daytime Telephone Number)                    (Alternate Telephone Number)

[ ] **PAYMENT INFORMATION CHANGE** - Provide the complete direct deposit or debit information as it should appear. This type of change requires a certified signature; see items 2 and 3 in the instructions.

Financial Institution's Routing No.:

(Financial Institution's Name)                    (Financial Institution's Telephone No.)

(Name(s) on the Account)

Financial Institution's Account No.:                    Type: [ ] Checking  [ ] Savings

[ ] **TAXPAYER IDENTIFICATION NUMBER CORRECTION** - *Use only for a correction.* Provide the correct number.

(First-Named Owner's Social Security Number)       **OR**       (Owner's Employer Identification Number)

**45**

## 3. SIGNATURES AND CERTIFICATION

Under penalties of perjury, I/we certify that the information provided on this form is true, correct, and complete. I certify that I have the authority to authorize financial transactions using the bank information described on this form. This request is submitted pursuant to the provisions of the Department of the Treasury Circulars, PD Series Nos. 2-86 (31 CFR Part 357) and 1-93 (31 CFR Part 356). I agree to indemnify and hold the United States harmless in the event of any loss that results from this request.

**For taxpayer identification number corrections,** I certify under penalty of perjury that:

1. The taxpayer identification number shown is my correct taxpayer identification number (or I am waiting for a number to be issued to me), **and**

2. I am not subject to backup withholding because **(a)** I am exempt from backup withholding, or **(b)** I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or **(c)** I have been notified by the Internal Revenue Service that I am no longer subject to backup withholding, **and**

3. I am a U.S. person (including a U.S. resident alien).

**Note:** You must cross out Item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

*The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.*

*If a certified signature is required, you must wait until you are in the presence of a certifying officer to sign and date this form. If there are two owners joined by the word "and," both may have to sign (see the instructions).*

| | |
|---|---|
| Sign Here: ⇒ ANN C Spiegel by Mad Deane, her ATTORNEY IN FACT | |
| (Signature) | (Title, if appropriate) |
| Address: 2551 HANION TURN The Villages FL 32162 | |
| (Number and Street or Rural Route) (City) (State) (ZIP Code) | |
| Date: 9-25-08 | 847-767-7921 |
| | (Daytime Telephone No.) |

| | |
|---|---|
| Sign Here: ⇒ | |
| (Signature) | (Title, if appropriate) |
| Address: | |
| (Number and Street or Rural Route) (City) (State) (ZIP Code) | |
| Date: | |
| | (Daytime Telephone No.) |

**Certifying Officer**
➤ The individuals must sign in your presence and you must complete the certification and affix your stamp or seal.
➤ Acceptable certifications: Financial Institution's Official Seal or Stamp (such as Corporate Seal, Signature, Guaranteed Stamp, or Medallion Stamp).
➤ Brokers must use a Medallion Stamp (original signature is required).
➤ Certification by a notary public is NOT acceptable.

I CERTIFY that Mark Samuels , whose identity is known or was proven to me, personally appeared before me this 25th day of September , 2008 ,

at Upland CA , and signed this form.
　　(City)　　　　(State)

**(OFFICIAL STAMP OR SEAL)**

*(Notary Certification is NOT Acceptable)*

(Signature and Title of Certifying Officer)
U.S. Bank (909) 985-5431
(Name of Financial Institution and Telephone/Fax Numbers)
81 W. Foothill Blvd Upland CA 91786
(Number and Street or Rural Route) (City) (State) (ZIP Code)

I CERTIFY that , whose identity is known or was proven to me, personally appeared before me this day of , ,
　　　　　　　　　　　　　　　　　　　　　　　　　(Month)　　　　　(Year)

at , and signed this form.
　　(City)　　　　(State)

**(OFFICIAL STAMP OR SEAL)**

(Signature and Title of Certifying Officer)

(Name of Financial Institution and Telephone/Fax Numbers)

*(Notary Certification is NOT Acceptable)*
(Number and Street or Rural Route) (City) (State) (ZIP Code)

(2)　　　　　　　　　　　　　　　　　　　　　　　　　PD F 5178

```
10/14/08          TREASURY DIRECT ACCESS BOOK ENTRY SYSTEM              14:17:19
                  INVESTOR ACCOUNT ENTRY/UPDATE ADVICE (STANDARD)

ACCOUNT: ██████-7195    EXTENDED REGISTRATION: N  CLASSIFICATION CODE: 1
NAME: ANN C SPIEGEL TRUSTEE OF THE        ANN C SPIEGEL REVOCABLE TRUST
      U/A DATED 08/13/08
ADDR: 2551 HANLON TERRACE
                                      THE VILLAGES        FL 32162
IRS NAME: SPIEGEL ANN C

TIN: ██████-1238          INV. CLASS: 01          PHONE:
ALT PHONE NO: (847) 767-7921  TAX STATUS/RATE: E .0000  BACKUP:    0
TREASURY REVIEW: N        HOLD CODE:              METHOD OF PAYMENT:  A

                      ACH PAYMENT INFORMATION
BANK ABA NUMBER: 322271627 NAME: WASHINGTON MUTUAL BANK      ACCOUNT TYPE: S
ACCOUNT NAME: ANN COOPER SPIEGEL        ACCOUNT NO: ████████████

STATUS: A     DOCUMENT AUTHORITY: ████████     OPERATOR ID: ████████


PD MAINTENANCE
```

47

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

## COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH

### CERTIFICATE OF DEATH

3200819042847

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT — FIRST (Given) | ANN |
| 2. MIDDLE | C |
| 3. LAST (Family) | SPIEGEL |
| AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST) | - |
| 4. DATE OF BIRTH mm/dd/ccyy | 02/12/1917 |
| 5. AGE Yrs. | 91 |
| 6. SEX | F |
| 8. BIRTH STATE/FOREIGN COUNTRY | IL |
| 11. EVER IN U.S. ARMED FORCES? | YES [X] NO UNK |
| 12. MARITAL STATUS (at Time of Death) | WIDOWED |
| 7. DATE OF DEATH mm/dd/ccyy | 10/14/2008 |
| 8. HOUR (24 Hours) | 1230 |
| 13. EDUCATION — Highest Level/Degree | HS GRADUATE |
| 14/15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? | YES [X] NO |
| 16. DECEDENT'S RACE | CAUCASIAN |
| 17. USUAL OCCUPATION — Type of work for most of life. DO NOT USE RETIRED | SECRETARY |
| 18. KIND OF BUSINESS OR INDUSTRY | AEROSPACE |
| 19. YEARS IN OCCUPATION | 30 |
| 20. DECEDENT'S RESIDENCE (Street and number or location) | 5502 CORTEEN PLACE |
| 21. CITY | VALLEY VILLAGE |
| 22. COUNTY/PROVINCE | CA |
| 23. ZIP CODE | 91607 |
| 24. YEARS IN COUNTY | 58 |
| 25. STATE/FOREIGN COUNTRY | CA |
| 26. INFORMANT'S NAME, RELATIONSHIP | MARK SAMUELS, NEPHEW |
| 27. INFORMANT'S MAILING ADDRESS | 2551 HANLON TERRACE, THE VILLAGES, FL 32162 |
| 28. NAME OF SURVIVING SPOUSE — FIRST | - |
| 29. MIDDLE | - |
| 30. LAST (maiden name) | - |
| 31. NAME OF FATHER — FIRST | ISAAC |
| 32. MIDDLE | - |
| 33. LAST | COOPER |
| 34. BIRTH STATE | RUSSIA |
| 35. NAME OF MOTHER — FIRST | CELIA |
| 36. MIDDLE | - |
| 37. LAST (maiden) | BURNSTEIN |
| 38. BIRTH STATE | RUSSIA |
| 39. DISPOSITION DATE mm/dd/ccyy | 10/22/2008 |
| 40. PLACE OF FINAL DISPOSITION | EDEN MEMORIAL PARK  11500 SEPULVEDA BLVD, MISSION HILLS, CA 91345 |
| 41. TYPE OF DISPOSITION(S) | BU |
| 42. SIGNATURE OF EMBALMER | NOT EMBALMED |
| 43. LICENSE NUMBER | |
| 44. NAME OF FUNERAL ESTABLISHMENT | GROMAN EDEN MORTUARY |
| 45. LICENSE NUMBER | FD1070 |
| 46. SIGNATURE OF LOCAL REGISTRAR | JONATHAN FIELDING, MD |
| 47. DATE mm/dd/ccyy | 10/20/2008 |
| 101. PLACE OF DEATH | KAISER FOUNDATION HOSPITAL |
| 102. IF HOSPITAL, SPECIFY ONE | [X] IP |
| 103. IF OTHER THAN HOSPITAL, SPECIFY ONE | |
| 104. COUNTY | LOS ANGELES |
| 105. FACILITY ADDRESS OR LOCATION | 13652 CANTARA ST |
| 106. CITY | PANORAMA CITY |

107. CAUSE OF DEATH

| | | Time Interval Between Onset and Death |
|---|---|---|
| IMMEDIATE CAUSE (A) | CONGESTIVE HEART FAILURE | DAYS |
| Due to (B) | ACUTE RENAL FAILURE | DAYS |
| Due to (C) | ACUTE TUBULAR NECROSIS | DAYS |
| Due to (D) | DIABETES TYPE II | YRS |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | ESSENTIAL HYPERTENSION, ATRIAL FIBRILLATION, CHRONIC KIDNEY DISEASE STAGE III |
|---|---|
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? | NO |

| 116. SIGNATURE AND TITLE OF CERTIFIER | CHIARA CONRADO M.D |
|---|---|
| Decedent Attended Since | 10/11/2008 |
| Decedent Last Seen Alive | 10/14/2008 |
| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | CHIARA CONRADO M.D.  13652 CANTARA ST, PANORAMA CITY, CA 91402 |
| 115. LICENSE NUMBER | C51048 |
| 117. DATE mm/dd/ccyy | 10/15/2008 |

| STATE REGISTRAR | A | B | C | D | E | *01200800915683* | FAX AUTH. # | *HD1380190* |

This is a true certified copy of the record filed in the County of Los Angeles Department of Public Health if it bears the Registrar's signature in purple ink.

*Jonathan E. Fielding MD*

Director of Public Health and Registrar   VA     DATE ISSUED   OCT 27 2008

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

48

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Robert A. Green, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 13-762C |
| The United States of America, | ) | (Judge Firestone) |
| Defendant. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Robert A. Green, by his attorney, Steven H. Jesser, Attorney at Law, P.C., herein responds and objects to defendant's motion to dismiss as follows.

1. Defendant "motion to dismiss" under FRCP 12 is in the nature of a motion for summary judgment under FRCP 56, repeatedly citing disputed facts which plaintiff has sought to raise in issue, in his complaint at law. A motion to dismiss is a pleading motion whose standard is whether a claim is stated, under mere federal <u>notice</u> pleading, not state fact pleading.

2. Defendant asserts that the court lacks jurisdiction and that the complaint does not state a cause of action upon which relief can be granted.

3. Defendant misapprehends that Mark Samuels' purported durable power of attorney was invalid, because it did not comport with California legal authority cited by plaintiff. Defendant's liability rests on its reliance and allowance of plaintiff's name being removed from a valid power of attorney. Federal courts have long had jurisdiction, as early as *Erie v. Tompkins,* 304 U.S. 64 (1938), to examine state legal authority, to resolve underlying substantive issues which do not conflict with federal law.

4. The argument is unsupportable that defendant has no duty to check legal compliance

49

regarding a power of attorney just because enforcement of a power of attorney is pursuant to state law. Query: Would defendant accept an unsigned power of attorney, an un-notarized power of attorney, a power of attorney that allowed self-dealing, etc? Clearly not. Whether defendant should have acted on this power of attorney should be resolved as a matter of proof, not pleading.

5. Defendant's argument that plaintiff had no standing until the death of his aunt begs the question. But for defendant's financial negligence and mistake, plaintiff would have been the sole owner, at the moment of his aunt's death. Defendant did not cite authority that this Court lacks jurisdiction where financial negligence is committed by defendant. It is the failure of defendants before the aunt's death which are the subject and focus of the complaint *sub judice*. Defendant was dilatory between the request to remove plaintiff's name, and the name being removed (on the same day his aunt died, no less). Defendant was not checking on the validity of the request, which should be resolved as a matter of proof, not pleading.

6. Defendant relies heavily on the remarkably short timing of the two pertinent events; the seventy-five minutes between plaintiff's aunt's death, and his name being removed. Strictly looking at the time stamp of the respective documents, plaintiff's name was removed after his aunt died, in their respective time zones. The official time of his aunt's death is 12:30 PM and the official time plaintiff's name was removed was 2:15 PM, which appears on its face to be incongruous. A genuine issue of material fact exists whether decent expired before the beneficiary's name was changed or after the beneficiary's name was changed. If discovery were allowed to proceed, plaintiff avers herein that defendant would not have removed a beneficiary's name if it knew that decedent had died on the same day.

6. Defendant had a duty of due care to plaintiff relating to the treasury certificate of Ms. Spiegel. However, the United States Treasury Department approved the requested change on or about October 14, 2008. This was the same day that Ms. Spiegel died. Defendant disregarded state law in allowing the change of beneficiary, a proximate result of its mistake, error, and financial negligence, whereunder it owed plaintiff a duty of due care, breached such financial duty, proximately resulting in plaintiff's damages at law.

7. Cal. Prob. Code §4232(b) (2012) requires that an attorney-in-fact is not in violation of any duty solely because he also benefits from his action. Defendant failed to ensure that this occurred.

8. Cal. Prob. Code §4231 (a) (2012) requires a duty to observe the same standard of care as a trustee of an express trust. Defendant failed to ensure that this occurred.

9. Under Cal. Prob. Code, a duty of loyalty exists to act solely in the interest of the principal and to avoid conflicts of interest. Defendant failed to ensure that this occurred. Cal. Prob. Code §4232(a) (2012).

10. Under Cal. Prob. Code §4234(a) (2012), a duty exists to keep in regular contact with the principal, to communicate with the principal, and to follow the instructions of the principal. Samuels performed none of these duties, and defendant failed to investigate whether any such statutorily required actions occurred.

11. Under Cal. Prob. Code §4264 (2012), an attorney in fact may not perform any of acts on behalf of the principal or with the property of the principal unless the power of attorney expressly grants that authority to the attorney-in-fact. Defendant failed to ensure that this occurred.

12. Samuels had a duty of loyalty to Ms. Spiegel, and to act solely in her best interest, and to avoid any conflicts of interest. Because Samuels was a specifically-named beneficiary of Ms. Spiegel's purported Trust instrument dated August 13, 2008, any funding of that Trust with the Ms. Spiegel's property necessarily presented Samuels with an inherent conflict of interest which he had an affirmative duty to avoid. Samuels breached these duties by effectuating the transfer and retitling the Decedent's Legacy Direct Account to the Decedent's Trust, thereby making himself and his sister two- thirds beneficiaries of those assets, to plaintiff's detriment. Samuels utterly failed to keep any regular contact with, or communicate with the Ms. Spiegel regarding his actions as her attorney-in-fact, and did not provide any evidence that he received instructions from the Decedent to make the transfer of her Legacy Direct Account to the Trust, none of which defendant failed to investigate or enforce before the United States Treasury Department approved the requested change on or about October 14, 2008; the same day the Decedent died,

13. Placing an account in the name of one individual, payable at death to another individual creates a form of a revocable trust often referred to as a Totten Trust. Because the decedent's durable power of attorney did not expressly and specifically authorize Samuels to

(1) create, modify, revoke, or terminate the POD provisions of the Legacy Direct Account,

(2) fund the Decedent's Trust with the Legacy Direct POD Account,

(3) revoke the gift of the Decedent's Legacy Direct Account that was held in trust for Green,

(4) create or change survivorship interests in the Decedent's Legacy Direct POD Account, or

(5) designate or change the designation of beneficiaries to receive the Legacy Direct Account on the Decedent's death, Samuels breached his duties by doing so----none of any of defendant sought to investigate or enforce, per its approval of the requested change on or about October 14,

2008; the same day Ms. Spiegel died. Defendant investigated or enforced none of the foregoing
before United States Treasury Department approved the requested change on or about October
14, 2008.

14. Through error, mistake, omission, and financial negligence, defendant failed to
investigate whether any of the statutory requirements set forth above existed , and otherwise
disregarded all of these duties of California state statutory law in causing on or about September
25, 2008, Samuels to use Ms. Spiegel's durable power of attorney and wrongfully change the
registration on the Account to Ms. Spiegel's Trust, of which Samuels and Bautista are substantial
purported beneficiaries, thereby revoking the pay on death clause to plaintiff, and substantially
reducing plaintiff's inheritance by at least $ 375,000.00, which damages are the proximate result
of defendant's error, mistake, omission, and financial negligence.

15. The Court possesses jurisdiction to adjudicate the complaint.

16. The complaint states a potential claim against the United States, upon which relief
can be granted.

17. Defendant is in error in asserting that plaintiff never possessed any ownership
rights with respect to Ms. Spiegel's account. Decedent named him as beneficiary of her financial
instruments.

18. The complaint does not fail because plaintiff does not allege a formal contract with
defendant. Jurisdiction obtains here because plaintiff's claim is founded upon regulation of an
executive department, or upon any express or implied contract with the United States." 28 U.S.C.
§ 1491(a). Plaintiff has specifically alleged failure by defendant to observe specifically-
described state regulations.

19. Defendant asserts that "plaintiff's citation to 31 C.F.R. § 13(b), which we understand
as a reference to 31 C.F.R. § 357.13(b). Compl. ¶¶ 30-31 is inapplicable to the Legacy

53

Treasury Direct Account described in the complaint. 31 C.F.R. § 357.0(a)(2)," is a formalistic

and *de minimus* argument. Defendant states that Legacy Treasury Direct accounts are governed

by Subpart C of Part 357 of Title 31 of the Code of Federal Regulations, id., or 31 C.F.R. §§

357.20 to 357.32, and that under 31 C.F.R. § 357.21(b)(2)(iii), POD registration creates

"ownership rights in the beneficiary only if the beneficiary survives the owner. During an

owner's lifetime, a transaction request may be executed by the owner without the consent of the

beneficiary. 31 C.F.R.20." A genuine issue of material fact exists whether decedent died before

or after the change of beneficiary was improperly recognized, and whether state law authority

was violated, before or after decedent expired.

20. Defendant urges that

"(plaintiff) had no ownership rights regarding Ms. Spiegel's account before the time Ms. Speigel died. At the time Ms. Spiegel died, on October 14, 2008 at 12:30 p.m. Pacific Time, Mr. Green cannot have acquired any ownership rights because he was not listed as a POD beneficiary for Ms. Spiegel's account. Thus, at no time did Mr. Green possess any ownership rights with respect to the account at issue. See 31 C.F.R. § 357.21(a)(1) ("Registration of a security conclusively establishes ownership").

This argument misses the point, and the gist of the action. Plaintiff did have ownership. If

ownership was removed, it was done so through unlawful action, through financial neglect of

defendant in not following California state law.

21. Defendant claims that this Court does not possess jurisdiction to hear negligence

claims, under *Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998). *Cottrell* does not

apply to defendant's financial negligence.

22. Defendant urges that regarding its failure to ensure Mr. Samuels's compliance with a

variety of provisions of the California Probate Code. Compl. ¶¶ 20-24, 27, "this Court does not

possess authority to entertain claims based upon state law. 28 U.S.C. § 1491; see also U.S.

Const. Art. VI, cl. 2 (Supremacy Clause)."Plaintiff does not observe this bald exclusion, as

asserted by defendant, in 28 U.S.C. § 1491.

For all of the foregoing reasons, plaintiff urges that plaintiff's motion to dismiss be

denied.

Steven H. Jesser, Attorney at Law, P.C.
Attorney for Plaintiff,
Admitted to Practice in U.S.C.F.C.
5250 Old Orchard Road, Suite 300
Skokie, IL 60077-4462
847-424-0200
800-330-9710 fax
shj@sjesser.com

December 28, 2013

### CERTIFICATE OF ECF SERVICE

I certify that I served copies of the foregoing response to motion electronically through the Court
ECF system on December 28, 2013 upon

Daniel B. Volk
US DOJ
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Daniel B. Volk@usdoj.gov

-----

/s/ Steven H. Jesser
Steven H. Jesser
Steven H. Jesser
Steven H. Jesser, Attorney at Law, P.C.
5250 Old Orchard Road, Suite 300
Skokie, IL 60077-4462
(847) 424-0200
shj@sjesser.com

ORIGINAL

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Robert A. Green, | ) | **FILED** |
| Plaintiff, | ) | **SEP 3 0 2013** |
| v. | ) | U.S. COURT OF FEDERAL CLAIMS |
| The United States of America, | ) | |
| Defendant. | ) | 13-762 |

### COMPLAINT

Plaintiff Robert A. Green, by his attorney, Steven H. Jesser, Attorney at Law, P.C.,

claims entitlement to damages from defendant United States of Attorney for funds erroneously,

mistakenly, and negligently paid to another, and not to plaintiff, by defendant's Treasury Retail

Securities, an agency of the Bureau of the Public Debt of the Office of Retail Securities of the

Department of Treasury.

In short, Plaintiff avers that defendant mis-directed such monies to another in derogation

of state statute and federal executive regulation, thereby depriving him of such funds.

### JURISDICTION

1. Jurisdiction is premised upon USC 28 U.S.C. 1491, as the amount in controversy is in

excess of $10,000.00, in that the United States Court of Federal Claims shall have jurisdiction to

render judgment upon any claim against the United States founded either upon the Constitution,

or any Act of Congress or any regulation of an executive department, or upon any express or

implied contract with the United States.

2. Plaintiff's claim is also governed by the Fifth Amendment to the United States

Constitution, which provides in pertinent part that no person shall be deprived of life, liberty, or

property, without due process of law.

3. This complaint is not subject to the Administrative Procedures Act, 5 U.S.C. 551 et

seq. However, in event of such dispute, Plaintiff exhausted all reasonable measures to resolve the dispute herein by prior communications with defendant, but without resolution.

4. This complaint is filed within the pertinent six-year statute of limitations for claims under Title 5, (5 C.F.R. 178.104).

## FACTS

1. Plaintiff is a resident of Chicago, Illinois. Plaintiff was beneficiary of the Ann C. Spiegel Revocable Trust, dated August 13, 2008.

2. Plaintiff was the closest relative in age and society to his aunt, Ann C. Spiegel (hereinafter "Ms. Spiegel"). They visited with each other in person numerous times over forty years, and spent much time conferring by telephone. Ms. Spiegel expired on October 14, 2008.

3. Ms. Spiegel had told plaintiff on several occasions that she had Treasury Certificates that embodied much of her wealth which were made to pay on her death to Robert Green and that when she died, plaintiff would become the sole owner of these Treasury Certificates.

4. Ms. Spiegel frequently indicated to plaintiff that she owned Treasury Certificates and, upon her death, plaintiff would become the owner of all such certificates. Ms. Spiegel established a Legacy Direct Account and registered it as "Ann C. Spiegel POD Robert A. Green" (hereinafter "Account"). Ms. Spiegel had a fixed intention to leave a portion of her estate to plaintiff, and a strong probability existed that Spiegel would have been able to implement her testamentary intention, but for the acts of Spiegel, described below.

5. Mark Samuels (hereinafter "Samuels") from his home in Florida wrongfully initiated a plan to interfere with Ms. Spiegel's fixed intention to leave the Account to plaintiff upon her death.

57

6.      Samuels traveled to California to institute his plan and on or about August 12, 2008,

Spiegel arranged for an estate planning attorney Howard Borenstein in California to draft estate

planning documents for Spiegel that were consistent with Samuel's wrongful plan to interfere

with plaintiff's rights of inheritance under the Account.

7.      Six weeks prior to Ms. Spiegel's death, on or about August 13, 2008, Samuels arranged

for and accompanied attorney Borenstein to visit Ms. Spiegel in an assisted living facility in

California, in order to execute the estate planning documents, which Samuels had caused to be

drafted in accordance with his previously-derived plan, a drastic departure from and inconsistent

with Ms. Spiegel's testamentary intention. Ms. Spiegel was ninety-one (91) years of age at the

time, heavily medicated and in an overall diminished mental state.

8.      Plaintiff was to receive 100.00% of the government bonds in the Ms. Spiegel's

Legacy Direct Account, pursuant to the POD provisions thereof: but, Ms. Spiegels's purported

revocable trust left her entire estate equally to Plaintiff, Samuels, and Samuels's sister, Barbara

Bautista ["Bautista"], depriving plaintiff of more than $ 375,000.00.

9.      Despite an invalid power of attorney, on or about September 25, 2008, Samuels used Ms.

Spiegel's purported durable power of attorney and wrongfully changed the registration on the

Account to Ms. Spiegel's Trust of which Samuels and Bautista are substantial purported

beneficiaries, thereby revoking the pay on death clause to plaintiff, and reducing plaintiff's

inheritance by two-thirds.

10. Defendant had a duty of due care to plaintiff relating to the treasury certificate of Ms.

Spiegel. However, the United States Treasury Department approved the requested change on or

about October 14, 2008. This was the same day that Ms. Spiegel died. Defendant disregarded

state law in allowing the change of beneficiary, a proximate result of its mistake, error, and

financial negligence, whereunder it owed plaintiff a duty of due care, breached such duty, proximately resulting in plaintiff's damages at law.

11.     Attorney Borenstein did not receive any payment from Ms. Spiegel for the estate planning documentation and execution of documents by Ms. Spiegel prior to or at the time Spiegel signed said documents in the assisted living facility on August 13, 2008.

12.     Attorney Borenstein first received payment in connection with Ms. Spiegel from some source on October 3, 2008, approximately eleven days prior to Ms. Spiegel's death, and two months after the legal work had been completed .

13.     Ms. Spiegel was a frugal person who owned no real property and elected to utilize paid on death accounts and similar joint ownership methods to effectuate her estate plan without the necessity of legal expense associated with will or trust preparation.

14.     Samuels knew Ms. Spiegel would object to remitting large sums of money for estate planning that she did not need. As a result, Samuels waited until the last days of Ms. Spiegel's life to arrange for monies to be paid to Attorney Borenstein, when Ms. Spiegel had even further reduced mental faculties.

15.     Attorney Borenstein and Samuels made numerous telephone calls from his Florida home to the U.S. Treasury to ensure compliance with his request to change beneficiaries, based upon his signature as his purported attorney in fact designation for Ms. Spiegel.

16. The durable power of attorney in question did not expressly grant Samuels any of the powers to create, modify, revoke, or terminate a trust, in whole or in part; fund with the principal's property a trust not created by the principal or a person authorized to create a trust on behalf of the principal; make or revoke a gift of the principal's property in trust or otherwise create or change survivorship interests in the principal's property or in property in which the principal

may have an interest; designate or change the designation of beneficiaries to receive any property, benefit, or contract right on the principal's death, so he was therefore prohibited from transferring and retitling the Decedent's Legacy Direct POD Account to the Decedent's Trust.

17.    Despite the ineffective power of attorney, the U.S. Treasury Department approved the requested change on or about October 14, 2008; the same day Ms. Spiegel died.

18.    The value of the Account on October 13, 2008 was $945,000.00.

19.    Plaintiff sued Samuels for tortious interference with an expected inheritance in connection with the use of a durable power of attorney to transfer approximately $945,000.00 worth of government issued bonds into the Decedent's purported revocable trust agreement. The government bonds were previously held in the Ms. Spiegels's name and payable-on-death (POD) to plaintiff. By mediation and settlement, plaintiff obtained certain, but not all of his damages, and under which settlement plaintiff was not barred from recovering the remainder of his damages from other non-parties (to that litigation), so liable. Jurisdiction of this Court was not affected by such prior litigation, mediation, and settlement.

20.    Cal. Prob. Code §4232(b) (2012) requires that an attorney-in-fact is not in violation of any duty solely because he also benefits from his action. Defendant failed to ensure that this occurred.

21. Cal. Prob. Code §4231 (a) (2012) requires a duty to observe the same standard of care as a trustee of an express trust. Defendant failed to ensure that this occurred.

22.    Under Cal. Prob. Code, a duty of loyalty exists to act solely in the interest of the principal and to avoid conflicts of interest. Defendant failed to ensure that this occurred. Cal. Prob. Code §4232(a) (2012).

23.     Under Cal. Prob. Code §4234(a) (2012), a duty exists to keep in regular contact with the principal, to communicate with the principal, and to follow the instructions of the principal. Samuels performed none of these duties, and defendant failed to investigate whether any such statutorily required actions occurred.

24.     Under Cal. Prob. Code §4264 (2012), an attorney in fact may not perform any of acts on behalf of the principal or with the property of the principal unless the power of attorney expressly grants that authority to the attorney-in-fact. Defendant failed to ensure that this occurred.

25.     Samuels had a duty of loyalty to Ms. Spiegel, and to act solely in her best interest, and to avoid any conflicts of interest. Because Samuels was a specifically-named beneficiary of Ms. Spiegel's purported Trust instrument dated August 13, 2008, any funding of that Trust with the Ms. Spiegel's property necessarily presented Samuels with an inherent conflict of interest which he had an affirmative duty to avoid. Samuels breached these duties by effectuating the transfer and retitling the Decedent's Legacy Direct Account to the Decedent's Trust, thereby making himself and his sister two- thirds beneficiaries of those assets, to plaintiff's detriment. Samuels utterly failed to keep any regular contact with, or communicate with the Ms. Spiegel regarding his actions as her attorney-in-fact, and did not provide any evidence that he received instructions from the Decedent to make the transfer of her Legacy Direct Account to the Trust, none of which defendant failed to investigate or enforce before the United States Treasury Department approved the requested change on or about October 14, 2008; the same day the Decedent died,

26. Placing an account in the name of one individual, payable at death to another individual creates a form of a revocable trust often referred to as a Totten Trust. Because the Decedent's durable power of attorney did not expressly and specifically authorize Samuels to

(1) create, modify, revoke, or terminate the POD provisions of the Legacy Direct Account,

(2) fund the Decedent' s Trust with the Legacy Direct POD Account,

(3) revoke the gift of the Decedent's Legacy Direct Account that was held in trust for Green,

(4) create or change survivorship interests in the Decedent's Legacy Direct POD Account, or

(5) designate or change the designation of beneficiaries to receive the Legacy Direct Account on

the Decedent's death, Samuels breached his duties by doing so----none of any of defendant

sought to investigate or enforce, per its approval of the requested change on or about October 14,

2008; the same day Ms. Spiegel died. Defendant investigated or enforced none of the foregoing

before United States Treasury Department approved the requested change on or about October

14, 2008.

27. Through error, mistake, omission, and negligence, defendant failed to investigate whether

any of the statutory requirements set forth above existed , and otherwise disregarded all of these

duties of California state statutory law in causing on or about September 25, 2008, Samuels to

use Ms. Spiegel's durable power of attorney and wrongfully change the registration on the

Account to Ms. Spiegel's Trust, of which Samuels and Bautista are substantial purported

beneficiaries, thereby revoking the pay on death clause to plaintiff, and substantially reducing

plaintiff's inheritance by at least $ 375,000.00, which damages are the proximate result of

defendant's error, mistake, omission, and negligence.

28. Only after plaintiff made inquiry of defendant, on July 16, 2010, Treasury Retail Securities

advised plaintiff that "Legacy Treasury Direct Account xxxx-xxx-7195 was established on

March 3, 2008 and registered "Ann C. Spiegel POD Robert A. Green. All interest payments were

direct deposited to a savings account in the name of Ann Cooper Spiegel at Washington Mutual

Bank. On October 14, 2008 the registration was changed on the account and your name was removed."

29. Defendant's approval of such registration was in violation of 31 C.F.R.13(a) (Obligations of the United States and Federal Reserve Banks With Respect to Book-Entry Securities and Security Interests), whereunder plaintiff was a Participant in Ms. Spiegel's Legacy Direct Account. As such, "the United States and the Federal Reserve Bank treat the Participant as *exclusively entitled* (emphasis added) to perform the following functions, even if the Treasury or a Federal Reserve Bank has any information or notice to the contrary, to:

(1) Issue a Transfer Message (which plaintiff did not do);

(2) Receive interest and other payments with respect thereof (which plaintiff did not receive after registration of Ms. Spiegel's account was changed;

(3) Exercise all the rights and powers with respect to the Security (which plaintiff did not do after registration of Ms. Spiegel's account was changed without notice to him).

30. 31 C.F.R. 13(b) states that Federal Reserve Banks and Treasury are not liable for adverse claims, that is, to a person asserting an Adverse Claim to a Security Entitlement or to a Book-entry Security in a Participant's Securities Account. "Adverse claim" means a claim that a claimant has a property interest in a Security and that it is a violation of the rights of the claimant for another Person to hold, transfer, or deal with the Security."

31. Plaintiff asserts herein that he was nevertheless exclusively entitled to receive interest and other payments, notwithstanding 31 C.F.R. 13(b), because plaintiff was the victim of fraud by one or more private citizens, in causing his beneficiary status to be removed when Ms. Spiegel was in state of diminished capacity, and without notice to or knowledge by plaintiff. Defendant

should have, but did not, investigate plaintiff's removal as beneficiary, caused by one of more private citizens.

32. Private litigation against Samuels has preceded filing of the action herein before this Court, resulting in mediation and partial settlement, serving as a partial satisfaction of plaintiff's damages, but plaintiff is still damaged by more than $ 375,000.00 resulting from the scheme by more than one private citizen to cause a change of beneficiary, which defendant failed through error, mistake, omission, and negligence to investigate and prevent. Defendant United States was not a party to any prior litigation, and settlement of such private litigation did not affect the jurisdiction of this Court in this action at bar.

33. In addition, under 31 C.F.R. 357.28(b) (Transaction Requests), a transaction request must be signed by the owner of a security. For change of name, if an individual's name has been changed from that appearing in the registration, the individual should sign both names to the transaction request form and state the manner in which the change occurred. No such procedure was followed here by defendant, since plaintiff's name as beneficiary was not changed and plaintiff did not sign any change of name., and defendant failed to ascertain such omission in allowing the unauthorized change of beneficiary.

**WHEREFORE:**

Plaintiff Robert A. Green prays for a judgment against Defendant United States for of $ 375,000.00, plus any interest and/or pre-judgment interest and/or post-judgment interest the Court deems to be warranted.

Respectfully Submitted,

Robert A. Green, plaintiff

/s/ Steven H. Jesser
By: Steven H. Jesser, Attorney at Law, P.C., his attorney

Steven H. Jesser, Attorney at Law, P.C.
Attorney for Plaintiff,
Admitted to Practice in U.S.C.F.C.
5250 Old Orchard Road, Suite 300
Skokie, IL 60077-4462
847-424-0200
800-330-9710 fax
shj@sjesser.com

September 27, 2013

FORM 2
COVER SHEET

# In The United States Court of Federal Claims

RECEIVED
SEP 3 0 2013
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

## Cover Sheet

Plaintiff(s) or Petitioner(s)

Robert A. Green

If this is a multi-plaintiff case, pursuant to RCFC 20(a), please attach an alphabetized, numbered list of all plaintiffs.

Name of the attorney of record (See RCFC 83.1(c)):  Steven H. Jesser

Firm Name:  Steven H. Jesser, Attorney at Law, P.C.

Post Office Box:

Street Address: City-  5250 Old Orchard Road, Suite 300

State-Zip:  Skokie, IL 60077-4462

Telephone & Facsimile Numbers:  847-424-0200 and 800-330-9710

E-mail Address:  shj@sjesser.com

Is the attorney of record admitted to the Court of Federal Claims Bar?  ☒ Yes   o No
Does the attorney of record have a Court of Federal Claims ECF account?  ☒ Yes   o No

If not admitted to the court or enrolled in the court's ECF system, please call (202) 357-6402 for admission papers and/or enrollment instructions.
Nature of Suit Code:  516
Select only one (three digit) nature-of-suit code from the attached sheet.
If number 213 is used, please identify partnership or partnership group. If numbers 118, 134, 226, 312, 356, or 528 are used, please explain.

Agency Identification Code:  000  TRE
See attached sheet for three-digit codes.

Amount Claimed:  $ 375,000.00
Use estimate if specific amount is not pleaded.

Disclosure Statement:
Is a RCFC 7.1 Disclosure Statement required?   o Yes   ☒ No
If yes, please note that two copies are necessary.

Bid Protest:
Indicate approximate dollar amount of procurement at issue: $_____
Is plaintiff a small business?   o Yes   o No

Vaccine Case:
Date of Vaccination: _____

Related Cases:
Is this case directly related to any pending or previous case?   o Yes   ☒ No
If yes, you are required to file a separate notice of directly related case(s). See RCFC 40.2.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT A. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-762C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>

Pursuant to Rule 7.2 of the Rules of the United States Court of Federal Claims (RCFC),

defendant, the United States, respectfully submits this reply in support of our motion to dismiss

the complaint filed by plaintiff, Robert A. Green. In our moving brief, we demonstrated that

Mr. Green has not identified a basis for this Court to exercise jurisdiction over his complaint,

and, even if the Court did have authority to entertain the complaint, Mr. Green's allegations do

not state a plausible claim against the United States.[1]

In his response (Pl. Opp'n), Mr. Green concedes that his complaint does not allege a

contract with the United States. Rather, he insists that this Court possesses subject matter

jurisdiction to consider his claims that are founded upon state law. Because Mr. Green fails to

identify any provision of Federal law requiring the payment he seeks, the Court should dismiss

the complaint.

---

[1] Mr. Green asserts that the complaint "states a potential claim." Pl. Opp'n ¶ 16. Potential claims do not meet the plausibility standard for surviving a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (internal citation omitted)).

67

**ARGUMENT**

The Tucker Act, 28 U.S.C. § 1491, grants this Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). In our moving brief, we established that Mr. Green does not allege that he had a contract with the United States. In response, Mr. Green concedes that his complaint does not allege a contract with the United States. Pl. Opp'n ¶ 18.

Nonetheless, according to Mr. Green, "[t]he complaint does not fail because plaintiff does not allege a formal contract with defendant. Jurisdiction obtains here because plaintiff's claim is founded upon regulation of an executive department . . . . Plaintiff has specifically alleged failure by defendant to observe specifically-described state regulations." *Id.*[2] However, Mr. Green fails to identify any authority for the proposition that the United States may be held liable for failing to observe state regulations. Indeed, the Tucker Act expressly limits the Court's jurisdiction to claims founded upon Federal law. 28 U.S.C. § 1491(a); *see generally United States v. Mitchell*, 463 U.S. 206, 216-17 (1983). "Claims founded on state law are . . . outside the scope of the limited jurisdiction of the Court of Federal Claims." *Souders v. S. Carolina Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007); *Waltner v. United States*, 98 Fed. Cl. 737, 764 (2011) ("The statute that plaintiffs attempt to rely on is an Arizona state statute and not a federal statute and enforcement of that statute is not within the jurisdiction of this court."), *aff'd*, 679 F.3d 1329 (Fed. Cir. 2012).

---

[2] To the extent Mr. Green's reference to the Tucker's Act mention of implied contracts, in paragraph 18 of his opposition brief, might be construed as a suggestion that an implied contract could be found here notwithstanding the conceded absence of an allegation of a "formal contract," no such distinction is appropriate because the elements for formation of an implied contract are the same as those for an express contract. *See Anderson v. United States*, 344 F.3d 1343, 1353 n.3 (Fed. Cir. 2003).

Mr. Green continues to argue that Mr. Samuels's power of attorney was invalid, and that the Government's "liability rests on its reliance and allowance of plaintiff's name being removed" based on an allegedly invalid power of attorney. Pl. Opp'n ¶ 3. But Mr. Green fails to identify any Federal statute or regulation providing for Government liability on this basis.

Even though he fails to identify a provision of Federal law to support this contention, Mr. Green insists that the Government "had a duty of care to plaintiff relating to the treasury certificate of Ms. Spiegel." Pl. Opp'n ¶ 6. However, this Court does not possess jurisdiction to entertain negligence claims. *See Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998). Mr. Green attempts to carve out an exception for "financial negligence" allegations, *e.g.*, Pl. Opp'n ¶ 5 (emphasis omitted), but he identifies no authority to support such an exception. Indeed, the Tucker Act plainly excludes claims sounding in tort, such as Mr. Green's. *See* 28 U.S.C. § 1491(a); *Souders*, 497 F.3d at 1307.

In short, Mr. Green acknowledges that his complaint does not allege a contract with the United States, and he fails to identify any provision of Federal law requiring the payment he seeks. Although Mr. Green insists that there are facts in dispute, even if every factual question he raises is resolved in his favor, he still will not have identified any provision of Federal law that would require the payment he seeks. Accordingly, the Court should dismiss the complaint for lack of jurisdiction under RCFC 12(b)(1).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, the Court should dismiss the complaint for lack of subject matter jurisdiction.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

BRYANT G. SNEE
Acting Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

LISA MARTIN
Bureau of the Fiscal Service
Office of the Chief Counsel
U.S. Department of the Treasury
200 Third Street
Parkersburg, WV 26106

s/Daniel B. Volk
DANIEL B. VOLK
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-7955
Facsimile: (202) 307-0972
Daniel.B.Volk@usdoj.gov

January 16, 2014

Attorneys for Defendant

APPEAL,CLOSED,ECF

## US Court of Federal Claims
## United States Court of Federal Claims (COFC)
## CIVIL DOCKET FOR CASE #: 1:13-cv-00762-NBF

GREEN v. USA
Assigned to: Judge Nancy B. Firestone
Demand: $375,000
Case in other court: 14-05057
Cause: 28:1491 Tucker Act

Date Filed: 09/30/2013
Date Terminated: 02/25/2014
Jury Demand: None
Nature of Suit: 516 Miscellaneous - Damages
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**ROBERT A. GREEN**

represented by **Steven H. Jesser**
Steven H. Jesser, Attorney at Law, PC
5250 Old Orchard Road
Suite 300
Skokie, IL 60077
(847) 424-0200
Fax: (800) 330-9710
Email: shj@sjesser.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**USA**

represented by **Daniel B. Volk**
U.S. Department of Justice - Civil Division (G)
Post Office Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7955
Fax: (202) 514-8624
Email: daniel.b.volk@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2013 | 1 | COMPLAINT against USA (TRE) (Filing fee $400, Receipt number 075720) (Copy Served Electronically on Department of Justice), filed by ROBERT A. |

| | | GREEN. **Answer due by 11/29/2013.** (Attachments: # 1 Civil Cover Sheet)(jb) (Entered: 10/02/2013) |
|---|---|---|
| 09/30/2013 | 2 | NOTICE of Assignment to Judge Nancy B. Firestone. (jb) (Entered: 10/02/2013) |
| 09/30/2013 | 3 | NOTICE of Designation of Electronic Case. (jb) (Entered: 10/02/2013) |
| 10/18/2013 | 4 | NOTICE of Appearance by Daniel B. Volk for USA . (Volk, Daniel) (Entered: 10/18/2013) |
| 12/02/2013 | 5 | MOTION to Dismiss pursuant to Rules 12(b)(1) and (6) , filed by USA.Response due by 1/2/2014. (Attachments: # 1 Appendix)(Volk, Daniel) (Entered: 12/02/2013) |
| 12/28/2013 | 6 | RESPONSE to 5 MOTION to Dismiss pursuant to Rules 12(b)(1) and (6) , filed by ROBERT A. GREEN. **Reply due by 1/13/2014.** (Jesser, Steven) Modified on 12/30/2013 to edit reply due date. (dls) (Entered: 12/28/2013) |
| 12/28/2013 | 7 | RESPONSE to 5 MOTION to Dismiss pursuant to Rules 12(b)(1) and (6) , *Amended to Include Attorney's Electronic Signature*, filed by ROBERT A. GREEN. **Reply due by 1/13/2014.** (Jesser, Steven) Modified on 12/30/2013 to edit reply due date. (dls) (Entered: 12/28/2013) |
| 01/16/2014 | 8 | Unopposed MOTION for Leave to File Attached reply Out of Time , filed by USA.Response due by 2/3/2014. (Attachments: # 1 Exhibit Reply Brief)(Volk, Daniel) (Entered: 01/16/2014) |
| 01/17/2014 | 9 | ORDER granting 8 Motion for Leave to File Out of Time. Defendant's reply is support of its motion to dismiss, as attached to defendant' motion for leave, is deemed filed as of this date. Signed by Judge Nancy B. Firestone. (dpk) Copy to parties. (Entered: 01/17/2014) |
| 02/20/2014 | 10 | REPORTED Order granting 5 Motion to Dismiss - Rule 12(b)(1) and (6). The Clerk is directed to enter judgment. Signed by Judge Nancy B. Firestone. (sr) Copy to parties. (Entered: 02/20/2014) |
| 02/25/2014 | 11 | JUDGMENT entered, pursuant to Rule 58, dismissing the complaint for lack of subject matter jurisdiction. Each party is to bear its own costs. (Copy to parties) (dls) (Entered: 02/25/2014) |
| 02/28/2014 | 12 | NOTICE OF APPEAL as to 10 Order on Motion to Dismiss - Rule 12(b)(1) and (6), Reported Order, filed by ROBERT A. GREEN. Filing fee $ 505, receipt number 9998-2344479. Copies to judge, opposing party and CAFC. (Jesser, Steven) (Entered: 02/28/2014) |
| 03/06/2014 | | CAFC Case Number 2014-5057 for 12 Notice of Appeal filed by ROBERT A. GREEN. (hw1) (Entered: 03/06/2014) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |
| 07/05/2014 09:41:48 |

Form 9

FORM 9. Certificate of Interest

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Robert A. Green _____ v. United States of America _____

No. 14-5057

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
appellant _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:
Robert A. Green

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
Does not apply.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
Does not apply.

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
Steven H. Jesser, Attorney at Law, P.C.

3/31/2014 _____          /s/ Steven H. Jesser _____
         Date                                    Signature of counsel
                                        Steven H. Jesser _____
                                             Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

73

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

<u>Mar 31, 2014</u>

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means
  (by email or CM/ECF)

| | |
|---|---|
| Steven H. Jesser | /s/ Steven H. Jesser |
| Name of Counsel | Signature of Counsel |

Law Firm: Steven H. Jesser, Attorney at Law, P.C.

Address: 2700 Patriot Boulevard, Suite 250

City, State, ZIP: Glenview, IL 60026-8021

Telephone Number: 847-424-0200

FAX Number: 800-330-9710

E-mail Address: shj@sjesser.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

**FORM 2. Notice of Appeal to the United States Court of Appeals for the Federal Circuit from a Judgment or Order of the UNITED STATES COURT OF FEDERAL CLAIMS**

## United States Court of Federal Claims

### Case Number 13-762C

Robert A. Green                    , Plaintiff,

v.                    **NOTICE OF APPEAL**

United States,          Defendant.

Notice is hereby given that Plaintiff Robert A. Green          (name all parties* taking the appeal) in the above named case hereby appeal to the United States Court of Appeals for the Federal Circuit from the order granting deft's.motion to dismiss (from the final judgment) ((from an order) (describe the order)) entered in this action on February 20     , 2014 (date).

(Signature of appellant or attorney)
Steven H.Jesser,Attorney at Law, P.C.
2700 Patriot Boulevard, Suite 250
Glenview, IL 60026-8021

(Address of appellant or attorney)

*See* Fed. R. App. P. 3(c) for permissible ways of identifying appellants.

110